**WOLF LOW, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 21499.**

United States Court of Appeals Ninth Circuit.

March 6, 1968.

Rehearing Denied April 22, 1968.

Robert Cohen, Las Vegas, Nev., Brody, Grayson & Green, Bernard Lauer, Los Angeles, Cal., for appellant.

Robert S. Linnell (argued), Asst. U. S. Atty., Joseph L. Ward, U. S. Atty., Las Vegas, Nev., for appellee.

Before MADDEN, Judge of the United States Court of Claims, and JERTBERG and DUNIWAY, Circuit Judges.

MADDEN, Judge:

The appellant, hereinafter called the defendant, was convicted in the United States District Court for the District of Nevada of violation of § 545 of Title 18, United States Code. The section makes criminal the receiving, concealment and facilitation of the transportation and concealment of merchandise—in this case watch movements—unlawfully imported into the United States. The trial was by court sitting without a jury.

In anticipation of the trial, the defendant made a motion to suppress the watch movements, which the prosecution had in its possession and intended to introduce in evidence at the trial. The court set the motion for hearing, and at the hearing witnesses were heard and other evidence was received. The following is a summary of the evidence received at that hearing.

On March 28, 1965, a Mr. Hansen was employed as an operations agent for Bonanza Airlines at the Los Angeles International Airport. The defendant, Wolf Low, purchased from Hansen at the ticket counter, a one way ticket to Las Vegas, Nevada, paying cash for the ticket. The defendant had two suitcases, and they exceeded the 45 pound limit for free transportation of baggage. The defendant paid for the excess weight, received his ticket and baggage checks and walked toward the gate from which he would board the plane. Hansen was suspicious as to the contents of the bags, and the airline ultimately opened the bags and examined the contents. We do not discuss the reasons for Hansen's suspicions, because the defendant assumes the legality of the opening and search of the bags by the airline.[1]

As a ruse to get the defendant to open one of the bags, the airline pretended to have lost the tag attached to that bag, called the defendant to the boarding area and asked him to open the bag to make certain that it was his bag. He inserted his key, it worked the lock, he said it was his bag, and refused to open it. After the bags had been put on the plane, they were taken off and held at the airport when the plane departed. A Mr. Petre, Hansen's superior in the airline's staff, called on a Los Angeles city policeman who was on duty in the airport when departures and arrivals occurred, to assist him and be a witness to Petre's opening of the bags. They tried keys which the airline had on hand and found one that unlocked the bags. Inside the bags they found many small boxes, each box containing a number of watch movements. It was later shown at the trial that there were some 3500 watch movements in the two bags. The policeman suggested that the United States Customs Service should be informed of what had been found. This was done and a customs official, Mr. Falbaum, came to the airport. The bags had been closed but had not been locked, and they were opened for Falbaum's inspection. The record is not clear as to whether the lids of the unlocked suitcases were physically lifted by airport employees or by Falbaum himself, or by both. He identified the watches as having been manufactured in Switzerland, and as not having been "symbolized," that is, marked by Swiss officials as proper for export to the United States, under the arrangements between the two governments. That meant that the watches were contraband.

At that point Falbaum took charge of the suitcases and the watches. He and another customs official boarded the next Bonanza plane to Las Vegas. The airline's office in Las Vegas had informed the defendant, when he had arrived and his baggage had not arrived, that it would probably be on the next flight, and that he should keep in touch. When Falbaum arrived with the bags, the defendant was advised that the bags had arrived; he came to the airport, picked them up and loaded them in a taxicab. At that point he was arrested and the bags were carried away by the customs officials.

The court, having heard the foregoing evidence at the hearing on the defendant's motion to suppress, denied the mo-

---

1. In the defendant's reply brief, filed in this court, at page 4 is the following statement: "Appellant's position in this case recognizes that the issue of the right of the airline, in the company of the Los Angeles police officer, to initially open the suitcases, without appellant's express consent and approval, has not been fully discussed in cases of a similar nature, which have assumed that such right validly exists. This counsel has also accepted the assumption of such right, believing that this case should be decided in favor of appellant on other grounds."

tion. At the later trial the watches were admitted in evidence over the defendant's objection. Other evidence not involved in this appeal was introduced by the prosecution and, as we have said, the defendant was convicted. He was sentenced to pay a fine of $5,000, sentence as to imprisonment was suspended and he was placed on probation for five years.

In this appeal the defendant attributes two errors to the district court: (1) erroneous denial of the defendant's motion to suppress the watch movements and exclude them from admission at his trial; (2) the admission of the watch movements in evidence at the trial. It thus appears that there is only one matter in issue, which is: "Did the actions of the United States Customs Officers, after they had been notified by the airline that it had two suitcases full of watch movements at its airport, constitute a violation of the constitutional provisions against unreasonable searches and seizures and unreasonable arrests?

As we analyze the case, the customs officers made no search at all, within the constitutional meaning of a search. They were notified that if they would come to the airport responsible employees of the airport would show them something which the airport had on view there. They would not have to search for it nor obtain access to any closed container to see it. The customs officers would not know until they looked at the objects what significance, if any, the objects would have for them. When they arrived at the airport the airport employees or one of the custom's officers, opened the suitcases, which had been left unlocked so that they could be readily opened for the customs officers to view the contents. The airport employees had no thought of returning the suitcases to the passenger without first getting the opinion of the customs officers as to whether the airline was being used for the transportation of contraband. When the customs officers viewed the packages of watches, it was readily apparent to them that the watches had been smuggled into the United States. It became their duty to make certain that the person who had sought to transport the watches did not succeed in his venture, and that he be arrested if he could be apprehended. Their taking possession of the suitcases, transporting them to Las Vegas, waiting for the passenger to appear, claim and take possession of the suitcases and start to make off with them was proper police work. Their arrest, made while the defendant was committing a crime in their presence, and their seizure from his person of the subjects of the crime were lawful.

The conduct of the airline in turning over to the Government the fruits of its search of the defendant's suitcases, and the conduct of the Government in making use of the information and evidence obtained by the airlines' search, fit readily within the doctrine of Burdeau v. McDowell, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921); Remmer v. United States, 205 F.2d 277, 285 (C.A. 9, 1953); United States v. Culver, 224 F.Supp. 419, 438 (D.C.Md., 1963); United States v. Frank, 225 F.Supp. 573, 575 (D.C.D.C. 1964).

The judgment is affirmed.

JERTBERG, Circuit Judge (dissenting):

The holding of the majority opinion is that the arrest of the defendant at Las Vegas was lawful because the defendant was committing a crime in the presence of the arresting officer, and that the seizure of the contraband from the person of the defendant was lawful because incident to a lawful arrest.

The majority reaches such conclusion by stating that the search made by the arresting officer at Los Angeles, the night before the arrest of defendant at Las Vegas, was no search at all "in the constitutional sense." I cannot agree. When Falbaum, the Customs Agent and

the arresting officer, arrived at the Los Angeles airport for his inspection, the suitcases were closed. The majority opinion states:

"The record is not clear as to whether the lids of the unlocked suitcases were physically lifted by airport employees, or by Falbaum himself, or by both."

My reading of the record convinces me that Falbaum opened the suitcases. If, as suggested in the majority opinion, some airport employee may have opened or assisted Falbaum in opening the suitcases, this was done after the arrival at the airport of Falbaum, and in his presence as a Customs Agent of the United States, and at his tacit direction. In my view, Falbaum must be charged with the opening of the lids to the suitcases.

After the suitcases were opened, Falbaum examined the contents before he learned that they were contraband. In this respect he testified that it was only after he had broken open several of the packages of watch movements in the suitcases, and carefully examined them, that the examination revealed the absence on the watch movements of the importer's symbol on some of the watch movements, or the presence of an obliterated symbol on others. It was only through this unlawful search that Falbaum had probable cause to arrest the defendant the following day at Las Vegas, and seize the contraband.

I readily admit that at the time of the arrest of the defendant, Falbaum knew that the suitcases contained contraband, but his knowledge of such fact was based entirely upon the unlawful search of the suitcases at Los Angeles on the night before. In my view the search at Los Angeles was made without probable cause, as was the arrest of the defendant at Las Vegas.

Since the majority opinion does not mention the failure of the Customs Officer to make any effort whatsoever to obtain a search warrant, either from a Commissioner at Los Angeles or Las Vegas, I refrain from any discussion thereof.

I would reverse the judgment of conviction and remand the cause to the district court for further proceedings.