UNITED STATES of America,
Appellee,

v.

Clinton HARLESS, aka Stephen Lisnak,
aka Alexander Dyle, Appellant.

No. 71-2789.

United States Court of Appeals,
Ninth Circuit.

July 12, 1972.

Edward R. Lebb (argued), of Schoen & Lebb, Honolulu, Hawaii, for appellant.

Jon Miko, Asst. U. S. Atty. (argued), Harold M. Fong, Asst. U. S. Atty., Robert K. Fukuda, U. S. Atty., Honolulu, Hawaii, for appellee.

Before MERRILL and KILKENNY, Circuit Judges, and FREY, District Judge.*

KILKENNY, Circuit Judge:

Raising certain constitutional questions with reference to search and sei-

* The Honorable William C. Frey, United States District Judge for the District of Arizona, sitting by designation.

zure and confrontation, and other issues with reference to procedure, Harless appeals his adjudication as a juvenile delinquent under 18 U.S.C. § 5031 et seq.

## BACKGROUND

Due to a misrepresentation as to his age, appellant was indicted on November 2, 1970, for violation of 18 U.S.C. § 1708 (possession of a stolen postal money order). He was tried by a jury and found guilty on June 19, 1971. On August 23, 1971, it was learned that appellant was a juvenile at the time of the commission of the offense and the judgment was set aside. Prior to trial, a motion to suppress and other motions were denied. Judge Tavares was in charge of all these proceedings.

On September 7, 1971, after a hearing at which time he was informed of his rights as a juvenile, appellant elected to be treated as a juvenile under the provisions of 18 U.S.C. §§ 5032 and 5033. An information was then filed charging appellant with the offense of juvenile delinquency in connection with the violation of 18 U.S.C. § 1708. He again filed motions to suppress and a motion to exclude the testimony of one Herman Oliverra, taken on the previous motion to suppress made in the adult proceeding. The motions were denied by Judge Pence who was then presiding.

## FACTS

With minor exceptions, the facts are undisputed. On June 26, 1970, a black attache case, found in a room by an employee, was delivered to the manager of a Hawaiian hotel. It was taken from a room that seemed to be empty, but had actually been rented. Upon opening the attache case and observing the contents of I.D. cards, several credit cards and keys, the manager called the hotel security guard, one Herman Oliverra. The guard took possession of the case and after he observed the contents called the police. Lena, a policeman, arrived and after examining the contents and taking the numbers of the cards returned to the police station to check on whether they were stolen. The record is not clear as to how the attache case was returned to the room in which it was found, but it is certain that it was placed there by Oliverra, Lena or the manager, probably by Oliverra. The latter then kept the room under surveillance. Shortly thereafter, he met the appellant outside the room on the fire escape. At that time the appellant had the attache case in his possession. After some discussion, appellant and Oliverra entered the room and when the latter said he must call the police, appellant tried to escape, and after a short scuffle was handcuffed. Although appellant was questioned, both before and after his detention, he was not placed under arrest. As mentioned, an inventory of the contents of the case disclosed several credit cards, keys, I.D. cards and the money order here under scrutiny. The government does not dispute appellant's contention that Oliverra was the only party to see the attache case in appellant's possession. It is conceded that the former was the government's principal witness, was 23 years of age and had been convicted of robbery. He was not present at the juvenile delinquency trial.

## ISSUES

(1) Appellant insists that the government should not have been permitted to introduce in evidence in the juvenile proceeding, the testimony of Oliverra taken before Judge Tavares on the motion to suppress in the adult proceeding. He insists that his Sixth Amendment guarantee of confrontation was violated.

■ Beyond question, Oliverra was a material witness. He was the only one who could establish possession in appellant of the attache case. The Sixth Amendment guarantee of confrontation does not; however, prohibit the introduction of testimony taken in a preliminary hearing where it is shown that the witness is actually unavailable for trial. California v. Green, 399 U.S. 149, 165, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970); Berger v. California, 393 U.S. 314, 89 S.Ct. 540, 21 L.Ed.2d 508 (1969); Mattox v. United States, 156 U.S. 237, 15 S.

Ct. 337, 39 L.Ed. 409 (1895).[1] However, the government is required to make an adequate showing that the witness is actually unavailable. Barber v. Page, 390 U.S. 719, 724–725, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968); Berger v. California, *supra.*

The record shows that the government tried to trace Oliverra through the Post Offices of San Francisco, Los Angeles, Honolulu, Las Vegas, Nevada and through the Sheriff's Office in Reno. An "all points" bulletin was broadcast for Oliverra's automobile on June 8, 1971. When Oliverra's wife was questioned on his whereabouts she thought that he had deserted her. In addition, a "material witness warrant" was issued.

■ The district judge weighed the evidence and applying the proper standard found that a good faith effort to locate the witness had been made. Such an effort is all that is required. The facts here support the district judge's findings. We should not disturb his findings. Owens v. Eyman, 434 F.2d 1062 (CA9 1970).

■ (2) Here appellant claims that his right to confrontation was denied because the judge did not have the opportunity to view the demeanor of Oliverra, the "key" witness. There is no claim that appellant did not have an adequate opportunity to fully cross-examine Oliverra in the hearing on the motion to suppress. Oliverra's testimony on that motion was given under circumstances closely resembling those that surround the usual trial. He was placed under oath and vigorously cross-examined by appellant's counsel. Appellant was represented by the same attorney on the motion to suppress, the adult trial, the second motion to suppress, the juvenile delinquency trial and here on the appeal and argument. While the direct examination of Oliverra on the motion to suppress consisted of only six and one-half typewritten pages, the exhaustive cross-examination by appellant's counsel ran a total of nineteen pages. We find no distinction between a full-fledged hearing where all facts are developed on a motion to suppress and a similar examination in a preliminary hearing.

■ (3) Again appellant touches on his Sixth Amendment right to confrontation. He argues that the trial judge in the juvenile proceedings erred, or abused his discretion, in not ordering transcripts of the adult proceedings to be prepared for possible impeachment purposes in the juvenile trial. The judge indicated that if the transcript was available it should be used. The United States Attorney then informed the judge that the court reporter estimated the transcript would consist of in excess of 1,000 pages and would take more than a month to prepare. The court then expressed some doubt as to the court reporter's ability to prepare such a transcript in less than six months. Under these circumstances, he said that he could not postpone the trial to await the preparation of the transcript of testimony in the adult proceeding. Surely, this was a matter within the sound discretion of the trial judge. All of the witnesses, with the exception of Oliverra, who testified in chief at the adult proceeding appeared and were vigorously cross-examined in the juvenile proceedings. Such transcripts of the earlier proceedings as were available were used in the juvenile proceedings. Douglas v. Alabama, 380 U.S. 415, 85 S. Ct. 1074, 13 L.Ed.2d 934 (1965); United States v. Pugh, 436 F.2d 222 (CADC 1970); Heard v. United States, 255 F. 829 (CA8 1919), upon which appellant relies, merely restate the time-honored rule that a defendant in a criminal case is entitled to cross-examine witnesses who testify against him. They do not even remotely suggest that on a record such as that before us a judge would abuse his discretion in failing to provide the suggested transcript.

1. In support: Dutton v. Evans, 400 U.S. 74, 89, 91 S.Ct. 210, 27 L.Ed.2d 213 (1971), and Mancusi v. Stubbs, 408 U.S. 204, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972),

■ (4) Prior to adjudicating the appellant a juvenile delinquent, the trial judge reviewed a "resume of appellant's past criminal record." Appellant argues that this was fundamentally unfair and does not comport with the due process requirements of recent Supreme Court juvenile cases, such as McKeiver v. Pennsylvania, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971), and authorities therein cited. The "resume" refers to traffic violations, a marihuana charge, as well as a summary of police contentions with reference to a forgery charge, all of which were dismissed without conviction.

While we do not approve a procedure whereby the trier of the facts reviews a "resume", or other abstract on the alleged criminal activity of a minor charged with juvenile delinquency, *Cf.,* Cotton v. United States, 355 F.2d 480 (CA10 1966), we must recognize that this trial was conducted before an able and experienced trial judge and that the danger of prejudice is here significantly less than if we were faced with a similar problem in a jury trial. Presumptively, the judge was fully familiar with the case law which prohibits the use in evidence of mere accusations, rather than convictions, even for impeachment purposes and that even then only evidence of conviction of a felony is permissible. If we must assume that a jury follows the court's instructions, Vitello v. United States, 425 F.2d 416, 422 (CA9 1970), cert. denied 400 U.S. 822, 91 S.Ct. 43, 27 L.Ed.2d 50 and United States v. Friedman, 445 F.2d 1076, 1083 (CA9 1971), it seems logical to assume that an experienced trial judge disregarded impermissible evidence in his finding of juvenile delinquency. Our studied analysis of the entire record convinces us, beyond doubt, that the judge would have reached the same conclusion without reference to the "resume". Even if we were to treat this proceeding as criminal in nature, on the totality of circumstances here presented we would have to hold that the error, if any, in receiving the document prior to the adjudication of delinquency, was harmless and did not affect the substantial rights of appellant under the provisions of Rule 52(a), FRCrimP. *Cf.,* United States v. Duran, 461 F.2d 1096 (CA9 June 20, 1972).[2]

■ (5) Finally, appellant says that his Fourth Amendment rights were violated when the hotel security guard, Oliverra, took possession of the attache case. He argues that Oliverra was acting in concert with the police and that an illegal search and seizure resulted.

The facts do not support this argument. As previously mentioned, the attache case was brought to the attention of the hotel manager by one of the hotel's employees. The case had been found in one of the rooms. A casual check of the hotel records seemed to indicate that the room was unoccupied. A preliminary examination of the case by the manager disclosed numerous items, including many credit cards, identification cards and other documents. The manager then called Oliverra to take a look at the contents. His impression was that the contents were of such a nature that he should call the police. To this point, the police had absolutely no connection with the seizure of the case or the inspection of its contents.

When Detective Lena responded to the call and observed the contents of the case, including the postal money order, the group decided to replace the case in the room and to set up a surveillance. Oliverra testified that shortly thereafter he saw the attache case in the possession of the appellant in a partially opened condition, while appellant stood on the fire escape outside of the room.

The facts before us are remarkably similar to those before the court in Barnes v. United States, 373 F.2d 517 (CA5 1967), where the hotel manager examined the contents of luggage under the impression that it was abandoned, found certain evidence and then notified the police. Citing Burdeau v. McDowell, 256 U.S. 465, 467, 41 S.Ct. 574, 65 L.Ed. 1048 (1921) and McLindon v. United

---

2. A court trial.

States, 117 U.S.App.D.C. 283, 329 F.2d 238, 240 (1964), the court there held that the Fourth Amendment proscribes governmental, rather than private action, and that since the search complained of did not involve governmental action, it was not illegal within the meaning of the Fourth Amendment. A recent statement of the rule is found in Coolidge v. New Hampshire, 403 U.S. 433, 487–488, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) and United States v. Novick, 450 F.2d 1111 (CA9 1971). The fact that the police took action after the initial discovery by private action is of no consequence. Coolidge v. New Hampshire, *supra*, 403 U.S. pp. 487–488, 91 S. Ct. 2022; United States v. Payne, 429 F.2d 169 (CA9 1970); Barnes v. United States, *supra*.

Under no stretch of the imagination does the "fundamental fairness" doctrine, as developed in In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) and In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), and restated in McKeiver, *supra*, 403 U. S. 528, p. 543, 91 S.Ct. 1976, require a reversal on the issues here presented.

The judgment of the lower court is affirmed.