**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**David Douglas OGDEN, Defendant-**
**Appellant.**

**No. 73–1041.**

United States Court of Appeals,
Ninth Circuit.

Sept. 12, 1973.

As Amended on Denial of Rehearing
Nov. 27, 1973.

---

John J. Cleary (argued), Matthew N. Lees, Federal Defenders of San Diego, San Diego, Cal., for defendant-appellant.

William A. Bower, Asst. U. S. Atty. (argued), Harry D. Stewart, U. S. Atty., Stephen G. Nelson, Asst. U. S. Atty., San Diego, Cal., for plaintiff-appellee.

Before CHAMBERS and CHOY, Circuit Judges, and SWEIGERT,* District Judge.

CHOY, Circuit Judge:

David Ogden was convicted after a nonjury trial of conspiracy to possess and possession with intent to distribute forty-six pounds of marijuana in violation of 21 U.S.C. §§ 841(a)(1), 846. He was sentenced to two five-year terms of imprisonment to run concurrently. We affirm.

Ogden and his wife, Theresa Ann, approached the United Airline ticket counter at the San Diego airport on September 27, 1972 at approximately 1:30 p. m. They presented two tickets for the 2:20 p. m. flight to Los Angeles with Monterey, California as their final destination, and checked three bags. Mr. Winenger, senior custom service agent for United, determined that the Ogdens fit the FAA hijack profile in every respect [1] and noted that one bag was extremely heavy. Winenger circled the tags on the baggage to indicate to airline employees that the owners of the baggage had been designated as profile selectees. The purpose of this procedure

---

* The Honorable William T. Sweigert, U. S. District Judge for the Northern District of California, sitting by designation.

1. This was confirmed *in camera.*

is to prevent flight delay from removal of baggage if its owner is taken off a flight.

The three bags passed on a conveyor belt to the baggage room where an airline employee, Ailshie, seeing the encircled tags, set them aside. Ailshie noted that one of the bags was very heavy and felt solid objects inside. He "tried to hit the sides of it, and just smelled the marijuana." (R.T. at 24). Ailshie used a screwdriver to pry open the edge of the bag, detected a stronger scent of marijuana and observed brick-shaped objects inside. He then closed the bag.

Ailshie informed Winenger of his find. Winenger called his supervisor, who alerted federal agent Anderson. When Anderson arrived at the bag room at 1:45 p. m., Ailshie reported what he had found. Anderson drew to within six inches of the suspect bag and smelled the strong odor of marijuana, an odor with which he was familiar. Ailshie asked, "Would you like us to open it again?" Anderson replied, "If you had it open, yes." The bag was reopened to reveal marijuana bricks wrapped in bluish-green and red cellophane.

The Ogdens were placed under arrest a little later and apprised of their constitutional rights in accordance with *Miranda*. The couple was then separated and federal agents secured the consent of Mrs. Ogden to open all the bags. All three contained contraband.

### I.

We must first determine whether the search conducted by Ailshie, the airline employee, was a governmental search either by virtue of the FAA regulations pursuant to which the airlines had put the anti-hijacking system into operation at the nation's airports, or as a result of federal participation in the discovery of the contraband in the bag room.

The airlines and the federal government have jointly developed security programs to combat the wave of hijackings which have plagued the nation. The role of the government has been characterized as dominant. United States v. Davis, 482 F.2d 893 (9th Cir. 1973). *Davis* dealt with the preboarding search of passenger carry-on luggage by a private airline employee. This court held that since the search was conducted as part of the overall, nationwide anti-hijacking effort, it made no difference whether a private employee or public official actually search the passengers; compliance with the Fourth Amendment was required. *Accord,* United States v. Lopez, 328 F.Supp. 1077, 1101 (E.D. N.Y.1971).

But *Davis* is distinguishable from the instant case. There the preboarding search was an integral part of the anti-hijacking system. Ailshie's removal of the Ogdens' baggage from the conveyor belt when he saw the encircled tags was government action since the procedure was part of the airline security program. However, Ailshie's ensuing search of the bag containing the marijuana was not directed or authorized by any federal regulation.[2] Therefore, the search cannot be characterized as a federal search on the basis of the FAA regulations. The same conclusion was reached by the Eighth Circuit in United States v. Burton, 475 F.2d 469 (8th Cir. 1973).

The Fourth Amendment was intended to restrain the activities of the sovereign. We must determine whether there was sufficient federal participation in Ailshie's search of the bag to render the search of federal one. If the search was private, the Fourth Amendment does not apply. Burdeau v. McDonald, 256 U.S. 465, 475, 41 S.Ct. 574, 65 L.Ed. 1048 (1921); Coolidge v. New Hampshire, 403 U.S. 443, 487, 91 S.Ct. 2022, 29 L.Ed. 2d 564 (1971); Eisentrager v. Hocker, 450 F.2d 490, 492 (9th Cir. 1971). The rule for identifying a federal search was set out in Lustig v. United States, 338

---

2. FAA regulations governing airport security are: 14 C.F.R. § 107.1 (1972); *id.* § 107.3; *id.* § 121.538; and *id.* § 121.589.

U.S. 74, 78–79, 69 S.Ct. 1372, 1374, 93 L.Ed. 1819 (1949):

> . . . a search is a search by a federal official if he had a hand in it . . . The decisive factor . . . is the actuality of a share by a federal official in the total enterprise of securing and selecting evidence by other than sanctioned means. It is immaterial whether a federal agent originated the idea or joined in it while the search was in progress. So long as he was in it before the object of the search was completely accomplished, he must be deemed to have participated in it.

The leading cases in this circuit on the application of the *Lustig* rule are Corngold v. United States, 367 F.2d 1 (9th Cir. 1966) and Gold v. United States, 378 F.2d 588 (9th Cir. 1967). In *Corngold,* customs agents, after demonstrating to an airline manager that the contents of a package were not as declared, asked if the manager had the authority to open the package, then aided him in doing so. This court found, in an en banc decision, that the airline employee opened the package solely to serve the purposes of the government and characterized the search as a federal search cast in the form of a carrier inspection.

*Gold* involved substantially different circumstances. There government agents contacted an airline manager and informed him that the description on an air waybill was inaccurate and that the address of the shipper was nonexistent. The agents then departed without revealing what they suspected the true contents to be, after which the manager opened one of the packages and discovered obscene film. The court held that the government agents had the right to point out the inaccuracy of the shipping document and that the opening of the package was the discretionary act of the manager, not so connected with goverment participation as to constitute a federal search. *Accord,* Clayton v. United States, 413 F.2d 297, 298 (9th

Cir. 1969); United States v. Cangiano, 464 F.2d 320, 324–325 (2nd Cir. 1972).

Ailshie's search cannot be deemed a federal search. Federal agents did not initially contact United Airlines regarding the Ogdens or their baggage. Nor was there any government encouragement to open the Ogdens' bag or assistance in doing so. Ailshie did not open the bag pursuant to the airline's inspection clause, as in *Gold* and *Cangiano,* but solely as the result of his own curiosity. In short, the search here was neither a federal search cast in the form of a carrier inspection, nor the discretionary act of the airline for its own purposes. Ailshie's search was his individual action and not subject to the Fourth Amendment.

## II.

▮▮ Ailshie closed the Ogden bag after he discovered the marijuana and prior to contacting his supervisor who in turn contacted federal authorities. When federal agent Anderson arrived at the bag room, he did not find the contraband in plain view as in United States v. Tripp, 468 F.2d 569, 570 (9th Cir. 1972). But Anderson had probable cause to search the bag based upon his experience, the odor he detected and the unequivocal statement of Ailshie that the suitcase contained marijuana. United States v. Valen, 348 F.Supp. 1163 (M.D. Pa.1972). The issue is whether the suitcase should have been reopened without first obtaining a search warrant. A search without the prior approval of a judge or magistrate is *per se* unreasonable under the Fourth Amendment subject only to a few well-delineated exceptions. *Coolidge, supra,* 403 U.S. at 455, 91 S.Ct. 2022.

There can be no tenable argument that the search here was incident to the lawful arrest of the Ogdens. The bags had been opened and the marijuana discovered prior to the arrest. Nor can consent be a justification for failure to obtain a search warrant. Mrs. Ogden's consent to open the bags was not ob-

tained until after the search was completed. There is authority in this circuit that once the bags are opened by private individuals, government agents need not obtain a search warrant before conducting their own search. Wolf Low v. United States, 391 F.2d 61, 63 (9th Cir. 1968). But we need not resolve that question for the exigent circumstances here provide an exception to the warrant requirement. United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 544 (1950). The government has satisfied its burden of demonstrating that there was insufficient time to procure a warrant.

Where the exigencies of time and the possible removal of the contraband to another state create an emergency, no warrant is required. Johnson v. United States, 333 U.S. 10, 14–15, 68 S.Ct. 367, 92 L.Ed. 436 (1948); Clayton v. United States, *supra*, 413 F.2d at 298. The leading decision in this circuit is Hernandez v. United States, 353 F.2d 624 (9th Cir. 1965). There the authorities were contacted at 8:30 p. m. The appellant and his luggage were scheduled to depart for New York at 10:50 p. m. There was uncontradicted testimony that a search warrant could not have been obtained until the following morning. The warrantless search was upheld. Similarly, in Romero v. United States, 318 F.2d 530 (5th Cir. 1963), no warrant was required where a passenger waiting for a train could reclaim his baggage before a customs agent could obtain a search warrant.

The Ogdens were ticketed for Monterey, California with a stopover in Los Angeles. Their plane was scheduled to depart approximately one-half hour from the time federal agent Anderson arrived in the bag room. The bags had either to be held or allowed on the plane along with the Ogdens. To hold the bags while a warrant was being procured would have been the equivalent of a seizure. *See* Chambers v. Maroney, 399 U.S. 42, 52, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). The exigencies of time and the possibil-

ity of removal of both the contraband and the suspects justified the warrantless search by Anderson.

Affirmed.