UNITED STATES of America,
Plaintiff-Appellant,

v.

Richard Norton SHERWIN, dba Marquis
Publishing Corporation, et al.,
Defendants-Appellees.

No. 73–3124.

United States Court of Appeals,
Ninth Circuit.

July 2, 1976.

**4**

John L. Murphy, Atty. (argued), and John E. Harris (argued), both of Crim. Div., Justice Dept., Washington, D. C., for plaintiff-appellant.

Gilbert H. Deitch (argued), Atlanta, Ga., James J. Brown (argued), Las Vegas, Nev., for defendants-appellees.

## OPINION

Before CHAMBERS, KOELSCH, BROWNING, DUNIWAY, ELY, HUF-STEDLER, WRIGHT, TRASK, CHOY, GOODWIN, WALLACE, SNEED and KENNEDY, Circuit Judges.

ANTHONY M. KENNEDY, Circuit Judge:

The Government appeals a pretrial order suppressing from evidence certain allegedly obscene books and ordering their return to the defendants. We hold the district court incorrectly analyzed the first and fourth amendment questions presented to it, and reverse the order to suppress.[1]

On April 10, 1972, the Milne Truck Lines terminal in Las Vegas received a shipment of seventeen cartons bearing shipping labels from "Marquis Publishing Company" in Van Nuys, California, addressed to "Talk of the Town Adult Book Store" in Las Vegas. The terminal manager noticed that one carton was damaged and that another had apparently been broken into and pilfered. Pursuant to company regulations, he inventoried the contents of these two cartons and found that one contained copies of a book titled *Miscegenation*, and the other, copies of a book titled *Wife Swapping*. The manager then called the Federal Bureau of Investigation, and two of its agents came to the terminal. When the agents arrived, they saw books from the two cartons on the manager's desk. The manager gave Agent Murray one copy of each of the two titles to take to the United States Attorney.

On April 11, 1972, the United States Attorney's office petitioned a federal magistrate for an order to show cause why a search warrant should not be executed for the entire shipment of seventeen cartons. Attached to the petition were the two books obtained from the trucking terminal and an affidavit prepared by Agent Murray. The magistrate ordered the seventeen cartons brought before him and notice given to the defendants. Copies of the petition and order were served on an employee of the Talk of the Town Book Store at 4:05 that afternoon and reached Marquis Publishing Company in Van Nuys six days later. The seventeen cartons were delivered to the magistrate by Milne Truck Lines at 4:30 p. m. The magistrate ordered the search warrant executed in his presence and the seventeen cartons were opened. That examination yielded the four books which formed the basis for the defendants' subsequent indictment on charges of using a common carrier for the interstate transpor-

---

1. This case was taken en banc after the original panel affirmed the judgment of the district court in a per curiam opinion filed December 9, 1974, and amended February 7, 1975. Judge Moore of the Second Circuit, sitting by designation, filed a dissenting opinion.

tation of obscene materials, 18 U.S.C. §§ 1462 & 1465. One of the two titles originally taken from the terminal was among the four books included in this indictment.

On September 6, 1973, the district court held a pretrial hearing.[2] The court considered a written stipulation of facts submitted by the parties and the record of proceedings before the magistrate. In addition, it heard testimony from Agent Murray and defendant Sherwin. The court thereupon granted the defendants' motions for return of seized property and suppression of evidence.

 The district court held that the magistrate's order for seizure of the seventeen cartons was invalid for two reasons.[3] First, the two books on which the magistrate based his order were obtained by the FBI from the trucking terminal in violation of the fourth amendment.[4] Second, the magistrate issued his order without first satisfying the first amendment requirement of an adversary hearing, with adequate notice to the parties in interest, on the question of obscenity. On this appeal, we con-

sider each of the two grounds for the district court's decision.

## I. INITIAL TAKING OF THE TWO BOOKS AS A VIOLATION OF THE FOURTH AMENDMENT

We hold that the FBI agent did not violate the fourth amendment by failing to obtain a warrant before receiving the books in question from the trucking terminal manager.

### A. The Search by the Terminal Manager

 At the outset we observe that the fourth amendment protects against unreasonable intrusions by the government, but not against the conduct of private individuals. *Burdeau v. McDowell*, 256 U.S. 465, 475, 41 S.Ct. 574, 65 L.Ed. 1048 (1921), *cited in Coolidge v. New Hampshire*, 403 U.S. 443, 487, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) (plurality opinion); *United States v. Ogden*, 485 F.2d 536, 538–39 (9th Cir. 1973), *cert. denied*, 416 U.S. 987, 94 S.Ct. 2392, 40 L.Ed.2d 764 (1974). Thus, evidence discovered in a private search is not subject to exclusion for failure to obtain a search war-

---

**2.** On May 31 and June 1, 1972, the defendants filed a number of pretrial motions, including motions for return of seized property and suppression as evidence of all books seized pursuant to the warrant of the magistrate. On June 28, October 24, and November 7, 1972, the defendants stipulated to delays in government answers to these motions, pending the district court's decision on motions to suppress in two other cases then pending. The Government filed its answers to the pretrial motions on December 1, 1972. A pretrial hearing was scheduled for January 26, 1973, but vacated upon motion of the Government pending the Supreme Court's decision in *United States v. Orito*, 413 U.S. 139, 93 S.Ct. 2674, 37 L.Ed.2d 513 (1973). The defendants made no objection to this further delay. On August 21, the district court ordered the pretrial hearing to be held September 6, 1973.

**3.** The district court's order, dated September 10, 1973, did not include findings of fact or determinations of law. On September 17, 1973, the court denied the Government's motion for such findings and determinations. However, the court's September 10 order referred to its earlier order in an unconnected case, *United States v. Basciano*, Crim. LV-2402, August 30, 1972. The facts of *Basciano* are quite close to the instant case, and we

regard the district court's decision here as based on the same grounds.

**4.** The district court regarded Agent Murray's affidavit, prepared with use of the two books, as tainted by the books' unlawful seizure. Thus the court did not consider whether the affidavit alone could have sustained the magistrate's order. We cannot accept the Government's invitation to reverse on this ground because it failed to insure that the affidavit be included in the record transmitted to this court. *See* Fed.R.App.P. 10. Nor do we consider the Government's contention that the appellees lacked standing to contest the alleged seizure, since this argument was neither raised before the district court nor originally assigned as a ground for appeal in this court.

Conversely, we do not consider whether the district court's order could be affirmed on the ground that the two books and affidavit, even if properly before the magistrate, failed to provide probable cause to order the seventeen cartons seized. This question was not considered by the district court, it has not been argued by the parties, and the books and affidavit are not part of the record on this appeal. Accordingly, we express no opinion on this issue.

rant or otherwise comply with the requirements of the fourth amendment.

 In defining a private search, the Supreme Court has stated that the fourth amendment applies only if the private party, "in light of all the circumstances of the case, must be regarded as having acted as an 'instrument' or agent of the state." *Coolidge v. New Hampshire, supra,* 403 U.S. at 487, 91 S.Ct. at 2049. Application of this definition will frequently require a careful factual analysis. However, there is little difficulty in holding the fourth amendment inapplicable to the instant case because prior or contemporaneous governmental involvement in the search was totally absent.

 A private person cannot act unilaterally as an agent or instrument of the state; there must be some degree of governmental knowledge and acquiescence. In the absence of such official involvement, a search is not governmental. *United States v. Goldstein,* 532 F.2d 1305, 1311 (9th Cir. 1976); *United States v. Harless,* 464 F.2d 953, 956–57 (9th Cir. 1972); *Eisentrager v. Hocker,* 450 F.2d 490, 492 (9th Cir. 1971);

*Duran v. United States,* 413 F.2d 596, 608 (9th Cir.), *cert. denied,* 396 U.S. 917, 90 S.Ct. 239, 24 L.Ed.2d 195 (1969). *See also United States v. Clegg,* 509 F.2d 605, 609 (5th Cir. 1975); *United States v. Issod,* 508 F.2d 990, 994 (7th Cir. 1974), *cert. denied,* 421 U.S. 916, 95 S.Ct. 1578, 43 L.Ed.2d 783 (1975); *United States v. Burton,* 475 F.2d 469, 471 (8th Cir.), *cert. denied,* 414 U.S. 835, 94 S.Ct. 178, 38 L.Ed.2d 70 (1973).[5] And once a private search is completed, the subsequent involvement of government agents does not retroactively transform the original intrusion into a governmental search. *United States v. Harless, supra,* 464 F.2d at 957; *Eisentrager v. Hocker, supra,* 450 F.2d at 492; *Wolf Low v. United States,* 391 F.2d 61 (9th Cir. 1968).

 In light of the above, we reach the unmistakable conclusion that the truck terminal manager in this case was not acting as an instrument of the government. There was no official involvement until after the terminal manager had completed his search and called the FBI.[6] When the

---

**5.** The instant case is relatively simple because of the total absence of governmental involvement prior to completion of the search. Equally clear is the situation where governmental involvement in a search is so pervasive that it is no longer even nominally private; the fourth amendment is applicable to such a "joint venture" because of the intrusive actions of the officials themselves. *See Corngold v. United States,* 367 F.2d 1, 5–6 (9th Cir. 1966) (en banc) (alternative holding); *United States v. Newton,* 510 F.2d 1149, 1153 (7th Cir. 1975).

In the gray area between these two clear situations, a search may be regarded as private even though there has been some governmental involvement prior to completion. *See Coolidge v. New Hampshire,* 403 U.S. 443, 485–90, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) (search instigated by police and conducted in their presence); *Gold v. United States,* 378 F.2d 588, 591 (9th Cir. 1967) (search made after government tip-off); *United States v. Capra,* 501 F.2d 267, 271, 272–73 n.4 (2d Cir. 1974) (dictum), *cert. denied,* 420 U.S. 990, 95 S.Ct. 1424, 43 L.Ed.2d 670 (private search conducted in presence of police). In other cases the actions of a private person may be attributed to the government, as when officers acquiesce in the unlawful or outrageous conduct of a private person acting solely for a law enforcement purpose. *See United States v. Payne,* 429 F.2d 169, 171 (9th Cir. 1970) (government agent observed while

private person conducted search by misrepresenting himself as law enforcement officer).

In determining whether the fourth amendment applies to a nominally private search, the ultimate test—"instrument or agent of the state"—is similar to that used in the "silver platter" cases to decide whether the fourth amendment was applicable to searches conducted by state officers. However, the factors leading to this ultimate conclusion have been treated somewhat differently in the two contexts. *Compare Coolidge v. New Hampshire, supra, with Lustig v. United States,* 338 U.S. 74, 78–79, 69 S.Ct. 1372, 93 L.Ed. 1819 (1949) (fourth amendment applies if there is some federal involvement) *and Gambino v. United States,* 275 U.S. 310, 316–18, 48 S.Ct. 137, 72 L.Ed. 293 (1927) (fourth amendment applies even without federal involvement, if sole motive of state officers is to enforce federal statute). Thus we do not believe the governmental/private distinction has been regarded in the same light as the former federal/state distinction.

**6.** Although the total absence of governmental involvement makes it unnecessary to rely on this additional factor, we observe that the terminal manager's motive was not solely to serve the purposes of the government. His initial purpose was to inventory the contents of the damaged cartons. *See United States v. Tripp,*

agents arrived they did not conduct a more extensive search; their activities were confined to viewing the materials displayed to them by the manager. As of this point, then, there had been no search within the meaning of the fourth amendment.

### B. Was There a Seizure?

 The defendants argue that, in any event, a seizure to which the fourth amendment is applicable occurred at a later point, when the FBI agents obtained the two books from the terminal manager. This argument is supported by a recent decision of the Eighth Circuit in a case similar to the one before us. *United States v. Kelly*, 529 F.2d 1365 (8th Cir. 1976). There the court held that a search by a private carrier did not implicate the fourth amendment, but that the government's subsequent acquisition of books discovered in the search constituted a "seizure" in violation of that amendment. *Id.* at 1371–72. However, we decline to follow *Kelly* because we do not regard the government's acceptance of materials obtained in a private search to be a seizure. In this regard we are guided by *Coolidge v. New Hampshire*, in which the Supreme Court held that the fourth amendment was not implicated when articles discovered in a private search were voluntarily turned over to the government. 403 U.S. at 488–89, 91 S.Ct. 2022.[7]

 The defendants contend that the terminal manager in this case was without authority to consent to a governmental taking of the two books. For the purpose of determining if a seizure has taken place,

however, only the fact of consent is, relevant, not whether it was properly authorized. The appellee's argument is mistaken because it confuses the question of third party consent as a justification for a governmental search with the problem of when the government's acquisition of property constitutes a seizure.

 In the former case, the search concededly falls within the scope of the fourth amendment because it is conducted by government agents. For such a search to be reasonable, it must ordinarily be made pursuant to a warrant; an exception is made where one with proper authority consents to the search. *See United States v. Matlock*, 415 U.S. 164, 171 & n.7, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974) and cases cited therein. Such consent makes the search reasonable, but it is still a search within the meaning of the fourth amendment.

 In the latter situation, the question is whether the governmental activity falls within the scope of the fourth amendment at all. A consensual transfer is by definition not a seizure. *See Caldwell v. United States*, 338 F.2d 385, 388 (8th Cir. 1964), *cert. denied*, 380 U.S. 984, 85 S.Ct. 1354, 14 L.Ed.2d 277 (1965). The private person's legal authority to approve a transfer of objects found in a private search has no bearing on whether his relinquishment of those objects to the government is coerced or voluntary. In *Coolidge*, for example, there was no indication the wife had any authority over the objects turned over, nor were the police required to determine

468 F.2d 569 (9th Cir. 1972), *cert. denied*, 410 U.S. 910, 93 S.Ct. 965, 35 L.Ed.2d 272 (1973). Once the nature of the books became apparent, the manager had the additional private motive of seeking to avoid possible criminal liability for the carrier in the interstate transportation of obscene materials. *See United States v. Pryba*, 163 U.S.App.D.C. 389, 502 F.2d 391, 398–99 (1974), *cert. denied*, 419 U.S. 1127, 95 S.Ct. 815, 42 L.Ed.2d 828 (1975).

**7.** Many cases have failed to undertake a separate fourth amendment analysis regarding the relinquishment of objects discovered in private searches. *See Burdeau v. McDowell*, 256 U.S. 465, 475, 41 S.Ct. 574, 65 L.Ed. 1048 (1921);

*United States v. Harless*, 464 F.2d 953, 956–57 (9th Cir. 1972); *United States v. Blanton*, 479 F.2d 327, 328–29 (5th Cir. 1973); *Barnes v. United States*, 373 F.2d 517 (5th Cir. 1967).

Other cases have regarded the taking of objects discovered in a private search as a reasonable seizure under fourth amendment standards. *United States v. Ogden*, 485 F.2d 536, 540 (9th Cir. 1973) (exigent circumstances justified warrantless seizure); *United States v. Tripp*, 468 F.2d 569, 570 (9th Cir. 1972), *cert. denied*, 410 U.S. 910, 93 S.Ct. 965, 35 L.Ed.2d 272 (1973) (warrantless seizure justified by plain view doctrine).

the scope of her authority.[8] If a transfer is voluntary, then it is not a seizure and the fourth amendment's reasonableness standard is simply inapplicable. *See Hester v. United States*, 265 U.S. 57, 58, 44 S.Ct. 445, 68 L.Ed. 898 (1924); *United States v. Jones*, 457 F.2d 697, 699 (5th Cir. 1972).[9]

Thus we conclude that there is no seizure within the meaning of the fourth amendment when objects discovered in a private search are voluntarily relinquished to the government.[10] We are, moreover, satisfied that such a voluntary relinquishment occurred in this case when the terminal manager gave the two books to the FBI agent. There was no evidence that the terminal manager's actions were in any way coerced. We recognize that in this sort of situation there are always forces encouraging a private party to cooperate with law enforcement agents, but such forces alone do not make the individual's actions involuntary. *Coolidge v. New Hampshire, supra*, 403 U.S. at 487–88, 91 S.Ct. 2022. Moreover, there are additional indications of voluntary action in this case, particularly the fact that the terminal manager first called the FBI on his own initiative. Thus we conclude that in this case there was no seizure so as to make the fourth amendment applicable.

8. In the other cases cited in the first paragraph of note 7 *supra*, the private party's lack of authority to consent to a governmental seizure was even more apparent.

9. A person's unauthorized action in obtaining property during a private search could be characterized as a seizure, but at that point there is no governmental involvement so as to make the fourth amendment applicable. *See* part I.A. *supra*.

10. This conclusion is consistent with the current conception of the function of the fourth amendment. "The premise that property interests control the right of the Government to search and seize has been discredited. . . . We have recognized that the principal object of the Fourth Amendment is the protection of privacy rather than property . . . ." *Warden v. Hayden*, 387 U.S. 294, 304, 87 S.Ct. 1642, 1648, 18 L.Ed.2d 782 (1967). Once a search is found to have been conducted without state action, then any invasion of privacy is not the government's responsibility.

## II. SEIZURE OF THE SEVENTEEN CARTONS WITHOUT AN ADVERSARY HEARING ON THE QUESTION OF OBSCENITY

The district court also held that the magistrate's order to seize the seventeen cartons of books was invalid on the ground that the first amendment requires an adversary hearing, with proper notice to the parties, prior to the seizure of allegedly obscene materials. Certainly the notice given the parties in the instant case was totally inadequate for the purpose of satisfying such a standard. However, we do not agree that an adversary hearing prior to the seizure in this case was required by the first amendment.[11]

The Supreme Court has made clear that there is no absolute right to an adversary hearing prior to the seizure of allegedly obscene material. *Heller v. New York,* 413 U.S. 483, 488, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973); *Roaden v. Kentucky*, 413 U.S. 496, 504 n.5, 93 S.Ct. 2796, 37 L.Ed.2d 757 (1973). In the instant case a neutral magistrate personally examined the books and independently determined probable cause for obscenity. This is all that is required under the first amendment for a valid warrant, as long as a prompt adver-

When objects found in a private search are turned over to the government, then, only the property interests of the owner are implicated. A motion for return of the objects is a proper means of asserting these interests, although they are subject to the government's superior interest in retaining property which may be used as evidence.

Even when there is a governmental seizure, suppression as evidence may not be the proper remedy if only property rights are affected and there has been no governmental invasion of privacy. *See id.* at 308, 87 S.Ct. 1642, *citing Burdeau v. McDowell*, 256 U.S. 465, 474, 41 S.Ct. 574, 65 L.Ed. 1048 (1921).

11. In addition, we note that when materials are seized in violation of the first amendment, the appropriate remedy is return of the seized property, but not its suppression as evidence at trial. *See Heller v. New York*, 413 U.S. 483, 493 n.11, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973); *Huffman v. United States*, 152 U.S.App.D.C. 238, 470 F.2d 386, 392–93 (1971), *rev'd on other grounds*, 163 U.S.App.D.C. 417, 502 F.2d 419 (1974).

sary hearing is available at the request of the parties.

 The proper means for requesting an adversary hearing on the question of obscenity is by moving for the return of seized property, as made by the defendants in the instant case. The delays in consideration of these motions were made without objection by the defendants. *See* note 2 *supra*. Thus we hold they have not been denied the prompt adversary hearing required under the first amendment.

■ However, *Heller* held that a court should grant the request of a party for return of copies not needed for evidentiary purposes, pending an adversary hearing on the question of obscenity. 413 U.S. at 492–93, 93 S.Ct. 2789. Therefore, we affirm the district court's order for the return of seized property to the extent it has been carried out. The remaining copies of the books may be retained by the government for evidentiary purposes, and the order for suppression of the books as evidence is reversed. The case is remanded for further proceedings consistent with this opinion.

CHAMBERS, Circuit Judge (concurring):

I concur in the judgment of the majority. I would find that the search in this case was private because the police were not significantly involved either prior to or during the search. *United States v. Harless*, 464 F.2d 953 (9th Cir. 1972); *Eisentrager v. Hocker*, 450 F.2d 490 (9th Cir. 1971). Absent police involvement prior to or during a search conducted by a private person, subsequent police acceptance of evidence found does not eliminate the private character of the search.

Similarly, I find no action by the government that would constitute a seizure. Under the facts in this case, the police action in accepting the privately discovered evidence from the person who found it does not appear to be a seizure within the meaning of the fourth amendment. *Cf. United States v. Wilson*, 492 F.2d 1160 (5th Cir. 1974). Therefore, because there was no police action amounting to either a search or a

seizure, the fourth amendment does not require the exclusion of the books.

KOELSCH and BROWNING, Circuit Judges, join CHAMBERS, Circuit Judge's opinion and part II of KENNEDY, Circuit Judge's opinion.

HUFSTEDLER, Circuit Judge, dissenting, with whom Judge ELY, concurs.

I would affirm because I subscribe to the views well expressed in *United States v. Kelly* (8th Cir. 1976) 529 F.2d 1365.