**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Angela Luz GOMEZ,**
**Defendant-Appellant.**

**No. 78–3516.**

United States Court of Appeals,
Ninth Circuit.

Dec. 28, 1979.

Rehearing Denied March 17, 1980.

A Dade County detective assigned to the Miami International Airport saw a suitcase that appeared to have fallen from a National Airlines conveyor belt in back of its ticket counter. It had no identification on it. He notified the airline's shift supervisor who made inquiries at the ticket counter. When no one could be found who could identify the suitcase, the supervisor took the suitcase to an office, accompanied by the officer who had found it and also by another officer who happened to be in the vicinity. The supervisor proceeded to open the suitcase to determine the identity of the owner, but when he had difficulty with a lock, one of the officers said that it merely needed to be tapped. The officer tapped or kicked the mechanism and it released the lock. The airline supervisor then continued the process of opening the bag. When the supervisor lifted the lid he and the officers immediately saw a revolver and many small packages wrapped in contact paper. The supervisor turned the suitcase over to the police. Their further search (now prompted by discovery of the gun) disclosed that the packages contained 23 pounds of 70% cocaine, having a street value in the millions of dollars.

Nothing in the interior of the suitcase indicated who the owner was. But appellant reported a lost suitcase which matched the description of this one, and when a controlled delivery was made in Los Angeles (to which she had flown on the day of the loss), she was arrested.

Carl E. Stewart, Newport Beach, Cal., Charles D. Edelstein, Miami, Fla., for defendant-appellant.

J. Stephen Czueleger, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before CHAMBERS and HUG, Circuit Judges, and INGRAM,* District Judge.

CHAMBERS, Circuit Judge:

Appellant was tried by the court on two counts of violation of the narcotics laws after the denial of her motion to suppress evidence. Her appeal from the conviction raises issues related only to the denial of the motion to suppress.

The district judge found specifically that the suitcase had no exterior identification and that it was opened by an airline employee "for the purpose of determining its ownership." The officers testified that they never suggested opening the suitcase and that they were aware that it would be improper to make such a suggestion. Their testimony remained unshaken on cross-examination. The shift supervisor testified that the decision to open the suitcase was

---

* The Honorable William A. Ingram, United States District Judge for the Northern District of California, sitting by designation.

his, and his alone. He stated that he was acting in furtherance of his airline's policy of attempting to reunite lost luggage with the passengers as quickly as possible and, when necessary, opening suitcases to determine ownership. He testified that fast action of this sort obviates time-consuming and expensive procedures of tracing passengers, often to very distant locations. He described the cooperation between airlines in this regard, including exchange of information as to the identity of incoming and outgoing passengers. In summary, the evidence supports the district judge's finding as to motivation for the search and his finding that the decision to open the suitcase was that of the airline supervisor.

▪ A carrier's search, on its own initiative, for its own purposes, is normally considered a private (and not a governmental) search, and thus not one giving rise to Fourth Amendment protections. *United States v. Ogden*, 485 F.2d 536, 538-9 (9th Cir. 1973); see *United States v. Gumerlock*, 590 F.2d 794 (9th Cir. 1979). There is nothing unreasonable about permitting a carrier, when faced with lost luggage that bears no identification, to open the luggage in an attempt to identify the owner. The search by airline personnel of luggage left in the public baggage room at an airport has been held to be a private search. *United States v. Blanton*, 479 F.2d 327 (5th Cir. 1973); *United States v. De La Fuente*, 548 F.2d 528 (5th Cir. 1977). Similarly, searches by motel or hotel employees of luggage left in rooms have been held to be private searches. *United States v. Wilson*, 472 F.2d 901 (9th Cir. 1973); *United States v. Harless*, 464 F.2d 953 (9th Cir. 1972).

▪ The evidence supports the district judge's finding that the decision to initiate the search was that of the airline employee, and his implicit conclusion that it was a private search when it was initiated. Appellant suggests that it thereafter became a governmental search by the presence of the officers and their observation of the airline employee's actions. We reject that contention. See *United States v. Entringer*, 532 F.2d 634 (8th Cir. 1976); *United States v.*

*Pryba*, 163 U.S.App.D.C. 389, 502 F.2d 391 (D.C.Cir.1974). But in this case there was more than mere observation. One of the officers tapped the suitcase and thus assisted the airline employee, at least to that extent. Given the express findings of the district judge as to the motivation for the search, and his finding that the suitcase was opened by the airline employee pursuant to that motivation, we are not inclined to hold that this slight "participation" by the officer converted the clearly private search into a governmental one. The officers testified that they were present out of an interest in helping the airline and they were admittedly curious. The record contains no evidence that even suggests that they had information to suspect that the suitcase contained contraband and there is no evidence to suggest that they knew the owner. We are not disposed to hold, on the facts of this case, that their presence and conduct constituted the search a governmental one, so as to bring into play the exclusionary rule.

We do not accept appellant's analogy of this case to that in *Corngold v. United States*, 367 F.2d 1 (9th Cir. 1966), where F.B.I. agents were found to have asked the airline employee to open a box and then assisted in holding back the flaps as he did so. Nor can we accept appellant's analogy in *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), which involved the governmental search of a footlocker made shortly after the arrest of the owner, but without a search warrant. *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979), decided since the briefing in this case, is similarly not analogous. Like *Chadwick*, it is directed to a police search of a suitcase of someone who was identified in advance as a suspect. This was obviously not the situation here. The facts of this case are clearly distinguishable. The other issues raised by appellant are without merit.

Affirmed.

HUG, Circuit Judge, dissenting:

I dissent. In my opinion the initiation of the search of the suitcase and the participa-

tion in that search by the government law enforcement officers does not permit us to characterize the search as a private search outside the restrictions of the Fourth and Fourteenth Amendments. A review of the undisputed facts adduced at the suppression hearing establishes the extensive involvement of the law enforcement officers.

Officers William Johnson and Fred Stadtler were detectives with the Organized Crime Bureau of Narcotics, Investigation Section employed by Dade County, Florida. They were assigned to work in the Miami International Airport to investigate interstate transportation of narcotics. On the evening of March 31, 1979 at about 8:30 or 8:45 p. m., Detective Johnson observed a suitcase up against the National Airlines ticket counter on the rear side at the very end of the counter. (TR 21–22).[1] The bag was located about 10 to 15 feet from the entrance of the conveyer belt that transported baggage to the baggage makeup area. (TR 21) He observed the suitcase for about 15 minutes, noting that it bore no identification nor any destination tag. When no one approached the suitcase during this time he then interviewed three National Airline ticket counter employees who were working at their stations behind the counter. (TR 22) The ticket agents did not know to whom it belonged nor had they seen anyone put it there. There is no indication that Detective Johnson suggested to them that they follow normal procedures to see that the bag was placed on the flight with the owner.

Instead, Detective Johnson went to the office of Peter Johnson, the Senior Station Manager of National Airlines, who is the supervisor of the 45 employees involved in the checking and ticketing of passengers, to report the lost bag to him. In his testimony, the station manager stated that Detective Johnson "told me he had seen a bag which had been placed at the end of my counter by someone and had been sitting there for quite some time apparently unattended and that it had no identification on the outside or no strap check indicating

destination city on the back, and just brought it to my attention." (TR 30)

The station manager stated that he was going to check into it; Detective Johnson told him he would go with him and watch. (TR 7) The station manager, Peter Johnson, evidencing a remarkable concern for this one unidentified bag, then personally went with Detective Johnson to the counter to see the bag. He there questioned the employees who stated they had no knowledge about the bag.

Detective Johnson carefully advised station manager Johnson "that I wasn't trying to influence anything that he wanted to do, simply telling him that the bag was there." (TR 8) Detective Stadtler then joined them. The station manager took the suitcase to a private area, a hallway adjacent to his office, accompanied by both detectives Johnson and Stadtler, who also evidenced an unusually conscientious concern that this one unidentified piece of luggage be immediately reunited with its owner.

Station manager Johnson stated that he decided that he should open the bag for the stated purpose of attempting to find some identification in the bag to assist in getting it on the proper flight to reunite it with the passenger. He "unsnapped the two snaps at either end of the suitcase and manipulated the combination lock and said I can't get the combination lock open." (TR 15) Detective Johnson was able to assist and kicked it with his heel and opened the combination lock. The station manager then opened the suitcase disclosing a 357 magnum pistol which lay on top of a bedspread covering everything else in the bag. The station manager continued examining the contents of the bag which revealed opaque plastic bags under the bedspread inside a pillow case. Detectives Johnson and Stadtler then took possession of the suitcase and its contents and opened the plastic bags finding a white powder which proved to be cocaine. At no point was a search warrant obtained.

The majority finds this warrantless search to be proper. The majority states:

1. All references to TR are to the reporter's transcript.

The evidence supports the district judge's finding that the decision to initiate the search was that of the airline employee, and his implicit conclusion that it was a private search when it was initiated.

The order of the district court is very brief.[2] The only actual finding of fact, that I can discover, upon which the majority can rely for this conclusion is the finding that the suitcase was "opened by a National Airlines' employee for the purpose of determining its ownership." The district court did not find who initiated the search as the majority contends; it really only found the National Airlines' employee's purpose in searching. I have particular difficulty in accepting this finding of the district court—that the purpose of the search by the station manager was to see that the bag was promptly delivered to the passenger. In order to accept the majority's view of the evidence we must believe that the detective from the state narcotics bureau was so interested in good passenger service that when he saw this one unidentified suitcase which was up against the end of the counter, unclaimed for 15 minutes, that he felt compelled to report it to the station manager. Apparently none of the employees behind the counter were enough concerned even after he spoke to them to take any action. When the station manager learned of the bag he did not thank Detective Johnson and instruct one of the 45 employees he supervises to take appropriate action but personally took charge of the matter. He opened the bag in a private area in the presence of Detective Johnson and Detective Stadtler who we are asked to believe joined station manager Johnson out of an interest in seeing that the passenger received this bag on time.

Even according the deference due to the trial court's findings of fact I cannot accept this finding, considering the manner in which the search was commenced and accomplished. I am compelled by the record to conclude that the motivating factor was an accommodation of the desire of the narcotics detectives to have the suitcase searched for contraband under the pretext of an authorized private search.

However, even accepting the district court's only factual finding, that the suitcase was "opened by a National Airlines' employee for the purpose of determining its ownership," the legal conclusion of the district court is, in my opinion, clearly wrong. The order of the district court set forth the following legal conclusion:

> In our view, the claimed involvement of the Government in the "search" made by the National Airlines' representative was not sufficient to evoke the protection of the Fourth Amendment of the Constitution against unreasonable search and seizure, or otherwise illegal.

With the hovering presence of the government agents at all stages and with their actual participation in the search, it appears to me that the government's involvement in the search was so pervasive throughout as to constitute a government search. This is apparent from the initial discovery of the suitcase, the inducement of the search by implicit hints to the station manager that it

2. The district judge made the following findings of fact and conclusions of law in his order denying appellant's motion to suppress:

> This matter is before the Court on the motion of defendant Gomez to suppress evidence consisting of an unidentified suitcase without exterior indicia of ownership left in the National Airlines ticket area at Miami International Airport in Miami, Florida.
>
> Opened by a National Airlines' employee for the purpose of determining its ownership, it was found to contain a 357 magnum revolver, some twenty-three pounds of loose granular material packaged in several oval shaped bags, a blanket and a pillow case, but no indication of ownership.

> The suitcase and its contents were thereafter turned over by a National Airlines' representative to officers of the Dade County Office of Public Safety who determined that the oval packages contained twenty-three pounds of cocaine.
>
> In our view, the claimed involvement of the Government in the "search" made by the National Airlines' representative was not sufficient to evoke the protection of the Fourth Amendment of the Constitution against unreasonable search and seizure, or otherwise illegal.
>
> The motion to suppress accordingly is denied.
>
> (footnote omitted).

should be searched, the unnecessary presence of the officers while it was searched, the kicking open of the lock and the ultimate participation of the government officers in the examination of the contents after it was opened. In my mind this search can hardly be characterized as a private search, outside the restrictions of the Fourth and Fourteenth Amendments. In the case of a private search the Fourth and Fourteenth Amendment restrictions apply if the private party "in light of all the circumstances of the case, must be regarded as having acted as an 'instrument' or agent of the state." *Coolidge v. New Hampshire*, 403 U.S. 443, 487, 91 S.Ct. 2022, 2049, 29 L.Ed.2d 564 (1971); *United States v. Sherwin*, 539 F.2d 1, 6 (9th Cir. 1976) (en banc).

Contrary to the majority's view, *Corngold v. United States*, 367 F.2d 1 (9th Cir. 1966), in my opinion, controls this case. At the very least this was a joint endeavor as in *Corngold*. The language of the opinion is particularly apt:

> But the evidence would be excludable in the present case even if the TWA employee had not acted solely to satisfy the government's interest in viewing the contents of the package, but instead had initiated and participated in the search for reasons contemplated by the inspection clause in TWA's tariff. The customs agents joined actively in the search. They held open the flaps of the large package; removed, opened, and inspected the contents of the small boxes which it contained; and marked the small boxes for future identification. Thus, at the very least, the search of appellant's package was a joint operation of the customs agents and the TWA employee. When a federal agent participates in such a joint endeavor, "the effect is the same as though he had engaged in the undertaking as one exclusively his own." *Byars v. United States, supra*, 273 U.S. 28, at 33, 47 S.Ct. 248 at 250, 71 L.Ed. 520. As Justice Frankfurter said in *Lustig v. United States*, 338 U.S. 74, 78–79, 69 S.Ct. 1372, 1374, 93 L.Ed. 1819 (1949):
>
> . . . The decisive factor in determining the applicability of the *Byars* case is the actuality of a share by a federal official in the total enterprise of securing and selecting evidence by other than sanctioned means. It is immaterial whether a federal agent originated the idea or joined in it while the search was in progress. . . .
>
> Where there is participation on the part of federal officers it is not necessary to consider what would be the result if the search had been conducted entirely by State officers. Evidence secured through such federal participation is inadmissible for the same considerations as those which made *Weeks v. United States*, 232 U.S. 383 [34 S.Ct. 341, 58 L.Ed. 652], the governing principle in federal prosecutions.

*Id.* at 5–6 (footnote omitted). *See also United States v. Gumerlock*, 590 F.2d 794, 800 n. 19 (9th Cir.) (en banc), *cert. denied*, 441 U.S. 948, 99 S.Ct. 2173, 60 L.Ed.2d 1052 (1979).

In my estimation the government participation in this warrantless search compels suppression of the evidence. I would reverse.