Vernon Walker **HUFFMAN**, Appellant,

v.

**UNITED STATES of America,**
Appellee.

Dennis Eugene **PRYBA**, Appellant,

v.

**UNITED STATES of America,**
Appellee.

**Nos. 23–781 and 23–782.**

United States Court of Appeals,
District of Columbia Circuit.

Argued June 8, 1971.

Decided June 28, 1974.

Before BAZELON, Chief Judge, and LEVENTHAL and MacKINNON, Circuit Judges.

LEVENTHAL, Circuit Judge:

This case has been the subject of two previous opinions by this court.[1] The original affirmance was followed by a supplemental opinion granting a petition for rehearing to provide an opportunity for reconsideration in light of pending Supreme Court decisions in a group of obscenity[2] cases. Those decisions have issued, and supplementary legal memoranda have been filed by the parties. We now reverse and remand.

## I.

Appellants were convicted on several counts of violating the local indecent publications statute, 22 D.C.Code § 2001[3] (1970), by possessing obscene material, with the intent to disseminate it. The material consisted of several "magazines" made up of collections of photographs of two nude or near-nude females shown undressing, caressing, fondling and embracing each other. The photographs were accompanied by brief written material, including a trilingual statement purportedly addressed to "serious students of art."

1. Both opinions are printed at Huffman v. United States, 152 U.S.App.D.C. 238, 470 F.2d 386 (1971).

2. Our opinion referred specifically to Alexander v. Virginia, in which the Supreme Court had requested the parties to brief the following question:

Whether the display of any sexually oriented pictorial magazines for commercial sale, when surrounded by notice to the public of their nature and by reasonable protection against exposure of the magazines to juveniles is constitutionally permissible?

The Supreme Court vacated the judgment of the Supreme Court of Virginia and remanded the case for further proceedings consistent with the decisions in the most recent obscenity cases. Alexander v. Virginia, 413 U.S. 836, 93 S.Ct. 2803, 37 L.Ed.2d 993 (1973).

3. "(a)(1) It shall be unlawful in the District of Columbia for a person knowingly—

(A) to sell, deliver, distribute, or provide, or offer or agree to sell, deliver, distribute, or provide any obscene, indecent, or filthy writing, picture, sound recording, or other article or representation;

\*  \*  \*  \*  \*

(E) to create, buy, procure, or possess any matter described in the preceding subparagraphs of this paragraph with intent to disseminate such matter in violation of this subsection; \* \* \*

(2)(B) For purposes of paragraph (1) of this subsection, the term 'knowingly' means having general knowledge of, or reason to know, or a belief or ground for belief which warrants further inspection or inquiry of, the character and content of any article, thing, device, performance, or representation described in paragraph (1) of this subsection which is reasonably susceptible of examination."

Having ascertained that the jury was properly instructed under the standards of Roth v. United States [4] and Memoirs v. Massachusetts,[5] and having made our own independent determination that these determinations were not contrary to the First Amendment,[6] we upheld the convictions of both appellants.

We voluntarily stayed the issuance of our mandate to await guidance on the "intractable obscenity problem." [7] We now review our decision in light of the principles enunciated in Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L. Ed.2d 419 (1973); Paris Adult Theatre I v. Slaton, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973); United States v. 12 200-ft. Reels of Film, 413 U.S. 123, 93 S.Ct. 2665, 37 L.Ed.2d 500 (1973); Heller v. New York, 413 U.S. 483, 93 S. Ct. 2789, 37 L.Ed.2d 745 (1973), and Roaden v. Kentucky, 413 U.S. 496, 93 S. Ct. 2796, 37 L.Ed.2d 757 (1973).

## II.

■ The Supreme Court decisions, particularly *Heller,* fully support our prior ruling upholding the use of *ex parte* hearings to grant warrants authorizing seizure of limited amounts of alleged obscene materials.

As to the legal definition of obscenity and its application, we face a different situation. Our earlier opinion explicitly adopted the standard of *Roth* and *Memoirs.* At that time we rejected appellants' contention that to sustain a conviction under an obscenity statute, the material must be found to be either "hard-core" pornography or be sold in an objectionable manner, *i. e.,* sold to juveniles or pandered in an offensive manner. [8]

The Supreme Court has recently undertaken "to formulate standards more

concrete than those in the past." Miller v. California, *supra,* 413 U.S. at 20, 93 S.Ct. at 2612. The new guidelines differ from the *Roth-Memoirs* test in several respects. First, the *Roth* test is retained insofar as the trier of fact must determine whether " 'the average person, applying contemporary community standards, would find that work, taken as a whole, appeals to the prurient interest (citations omitted)." Miller v. California, *supra,* at 24, 93 S. Ct. at 2615. Second, the trier of fact is to determine "whether the work depicts or describes, in a patently offensive way, sexual *conduct* specifically defined by the applicable state law." *Id.* (Emphasis added.) Third, the trier of fact must determine "whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value." *Id.* Although these standards generally resemble the earlier test, the new guidelines also represent a break from *Roth* and *Memoirs.*

The *Miller* opinion confirmed the state's ability to obtain obscenity prosecution, even in the absence of pandering or orientation to juveniles, but it confined that ability when, as, and if, limited to instances of "hard-core" sexual conduct. The Court said:

Under the holdings announced today, no one will be spbject to prosecution for the sale or exposure of obscene materials *unless these materials depict or describe patently offensive "hard core" sexual conduct* specifically defined by the regulating state law, as written or construed.

Miller v. California, *supra,* at 27, 93 S.Ct. at 2616. (Emphasis added.)

To give concrete meaning to its new definition of obscenity the Court gave

---

4.  354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957).

5.  383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966).

6.  *See* Jacobellis v. Ohio, 378 U.S. 184, 84 S. Ct. 1676, 12 L.Ed.2d 793 (1964).

7.  Interstate Circuit, Inc. v. Dallas, 390 U.S. 676, 704, 88 S.Ct. 1298, 20 L.Ed.2d 225 (1968) (Harlan, J., dissenting).

8.  *See, e. g.,* Ginzburg v. United States, 383 U.S. 463, 86 S.Ct. 942, 16 L.Ed.2d 31 (1966).

examples of areas of permissible regulation:

> (a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.

> (b) Patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals.

Miller v. California, *supra*, at p. 25, 93 S.Ct. at 2615. While these examples are not an "exhaustive catalog" of what is patently offensive, they "fix substantive constitutional limitations, deriving from the First Amendment, on the type of material subject to such a determination" and other material must be "sufficiently similar to such material to justify similar treatment." Jenkins v. Georgia, 418 U.S. 153, at 160–161, 94 S.Ct. 2750, at 2755, 41 L.Ed.2d 640 (1974).

This aspect of *Miller* confined the constitutional reach of obscenity statutes, although in other respects *Miller* expanded the state's regulatory area.[9]

■ The constitutional requirement that the state obscenity laws "specifically define" the "hard core sexual conduct" that may not be depicted does not necessitate specificity in the text of the statute if it is provided by authoritative judicial interpretation. In the various cases remanded by the Supreme Court to the state courts for further consideration in the light of *Miller* there has been a divergence of approach. Two decisions upheld convictions under state laws which could be considered vague in

language because prior authoritative judicial interpretation had brought them within the degree of specificity required by the Supreme Court in *Miller*. Rhodes v. State, 283 So.2d 351 (S.Ct. Fla.1973); State v. J-R Distributors, 82 Wash.2d 584, 512 P.2d 1049 (1973). A third state case, however, on remand from the Supreme Court, overturned a conviction under the Indiana obscenity statute, finding that the statute was unconstitutionally vague in its failure to specify the sexual conduct, the depiction of which constituted obscenity. Stroud v. State, 300 N.E.2d 100 (S.Ct.Ind.1973).

A question arises whether the statutory provision involved in the conviction before us, 22 D.C.Code § 2001, could be constitutionally salvaged by the court without "concrete legislative efforts" (see *Miller*, 413 U.S. at 25, 93 S.Ct. 2607).[10] If this were the only issue provided by the record, it might be appropriate to remand this case to the District of Columbia Court of Appeals, which is now the tribunal to render authoritative interpretations of the D.C. Code,[11] for further consideration.

Whatever the possibility that the D. C. Court of Appeals might, by specific limitations wrought through a doctrine of construction, or re-construction, salvage the constitutionality of 11 D.C. Code § 2001, for prospective application, appellants' convictions cannot be sustained on this record.

Under the 1973 *Miller* opinion the trier of fact must determine whether the work as a whole "depicts or describes, in

---

9. Thus, the Court explicitly rejected the *Memoirs* requirement that the prosecution demonstrate that the materials in question were "utterly without redeeming social value." *See* Miller v. California, 413 U.S. 15, 24–25, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). For a discussion of other aspects of the recent decisions, *see* H. Leventhal, The 1973 Round of Obscenity-Pornography Decisions, 59 A.B.A.J. 1261 (1973).

10. There is a question of the "judicial role" in such a salvaging. The state courts, which have received remands from the Supreme Court, are not subject to constraints under the Federal Constitution to the same extent

as pertain to federal courts, as is illustrated by their use in some states for advisory opinions. There are no pertinent rulings as to the latitude available to the District of Columbia Court of Appeals—a unique court that is organized under a law enacted pursuant to Article I of the Constitution, yet not devoid of characteristics of Article III, *see* Palmore v. United States, 411 U.S. 389, 93 S.Ct. 1670, 36 L.Ed.2d 342 (1973).

11. Cooper v. Goodwin, 155 U.S.App.D.C. 449, 454, 478 F.2d 653, 658 (1973) (Leventhal, J., concurring); M.A.P. v. Ryan, 285 A.2d 310 (D.C.App.1971).

a patently offensive way, sexual conduct [as] specifically defined . . . ." What is required under this opinion, and what is lacking from the charge in the case at bar, is an instruction to the jury to use a standard focusing on the depiction of specifically defined sexual conduct. Rather, the "patently offensive" test to be applied to the evidence was stated by the judge in general and subjective terms,[12] fairly reflected in this passage from the instructions to the jury:

> You must decide whether the predominant appeal of the publications is to the prurient interest, a shameful or morbid interest in sex, and if they go substantially beyond customary limits of candor in description of such matters.

In our opinion granting the petition for rehearing, we specifically stated that although the materials were obscene under the *Roth-Memoirs* test, they were not "hard-core" pornography.[13]

We have grave doubt whether these "Lesbian" pictures are violative of the narrow and specific prohibitions that now mark the limit of constitutionality. The materials are described in our earlier opinion, and reiteration is not necessary. It suffices to say that the materials do not show "ultimate sexual acts, normal or perverted, actual or simulat-ed." (See *Miller, supra,* 413 U.S. at 25, 93 S.Ct. at 2615). There is no vaginal, anal or oral penetration. Our earlier opinion stressed that "imminent" Lesbian activity might suffice to show material "patently offensive because it goes substantially beyond customary limits of candor." (152 U.S.App.D.C. at 245, 254, 470 F.2d 393, 402) But *Miller* requires "hard core sexual conduct"—exemplified by "ultimate sexual acts" or the kind of conduct covered by a "lewd exhibition of the genitals." [14] This requirement was reiterated in Jenkins v. Georgia, *supra,* where the Supreme Court said: "Appellant's showing of the film 'Carnal Knowledge' is simply not the 'public portrayal of hard core sexual conduct for its own sake, and for ensuing commercial gain' which we said was punishable in *Miller.*"

▮ The appellants protested throughout that they could not validly be convicted on the vague standards used by the prosecutor and the trial judge. Although their particular remedy was not accepted by the Supreme Court, that Court did acknowledge the need for specific confinement of the obscenity statutes to arrive at valid contours. Since the judgment in appellants' case has not become final "any constitutional principle enunciated in *Miller* which would serve to benefit [appel-

---

12. This is the essence of the entire instruction as may be discerned from the other pertinent paragraphs (JA 116–118):

The word "obscene" as used here signifies that form of immorality which relates to sexual impurity and which has a tendency to arouse lustful thoughts. The publications which have been admitted into evidence must be found by you to be calculated to corrupt and deprave the minds and morals of those who view their contents. The matter must tend to arouse sexual impurities and lead to sexual impure thoughts.

\* \* \* \* \*

That is to say to find the publications or any of them obscene, you must conclude:

(1) That the dominant theme of the publication taken as a whole appeals to a prurient interest in sex, and

(2) That the publication is patently offensive because it goes substantially be-yond customary limits of candor in the description of representation of sexual matters and

(3) That the publication is utterly without redeeming social value.

\* \* \* \* \*

You must decide whether the predominant appeal of the publications is to the prurient interest, a shameful or morbid interest in sex, and if they go substantially beyond customary limits of candor in description of such matters.

13. 152 U.S.App.D.C. at 258, 470 F.2d at 406.

14. In view of the procedural stance of this case, we are not called upon to decide on the merits whether the photographs before us would be subject to condemnation as a lewd exhibition of the genitals, in a trial where the jury was properly instructed under the *Miller* standards.

lants] must be applied in their case." Hamling v. United States, 418 U.S. 87, at 102, 94 S.Ct. 2887, at 2900, 41 L.Ed. 2d 590 (1974).

In the context of this case, featured by doubt as to whether the materials violate the specific *Miller* standards, elementary constitutional considerations preclude affirmance of a conviction where the jury was not instructed that it was its task, as surrogate for the community, to determine whether there was depiction of "sexual conduct" to a point of patent offensiveness.

The case is reversed and remanded for further proceedings not inconsistent with this opinion.

So ordered.