362 So.2d 1107 (1978)
STATE of Louisiana
v.
Warren GAMBINO.
No. 61728.
Supreme Court of Louisiana.
September 5, 1978.
Rehearing Denied October 5, 1978.
*1108 Patrick A. Rankin and William M. Lucas, Jr., Dufour, Levy, Marx, Lucas & Osborne, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise S. Korns, Asst. Dist. Atty., for plaintiff-appellee.
SUMMERS, Justice.
By a bill of information the District Attorney of Orleans Parish charged defendant Warren Gambino with the exhibition, management and display of hard-core sexual conduct in the July 1977 issue of a magazine entitled "National Screw", a violation of the Obscenity Act. La.Rev.Stat. 14:106.[1] *1109 After trial by jury defendant was convicted and sentenced to pay a fine of $1,000 and to serve six months in the parish prison. The assignments of error urged on this appeal are grouped into six arguments.
Briefly, the record facts giving rise to this prosecution show that defendant is the owner of the Fast Stop Food Store No. 3 at the corner of Elysian Fields and Filmore Avenue in a predominantly residential neighborhood of the City of New Orleans. It is a convenience store where food, liquor, and popular magazines are sold, including such sexually oriented magazines as "Playboy", "Penthouse", "National Screw", and "Oui". Before this prosecution defendant appeared before the City Council on a complaint by a neighborhood Catholic school that these and other sexually oriented magazines were on display in a conspicuous place at the center of his store in such a manner that school children could see and buy them. At the Council's suggestion these sexually oriented magazines were placed in a separate rack at the far end of the cashier's counter so that only the titles were visible, and the matter was dismissed.
Officer Rickey Bruce entered defendant's store on July 29, 1977 to investigate obscenity violations. From the book rack at the end of the cashier's counter he selected two magazines, "Climax" and "National Screw", issue of July 1977, which he purchased, paying $4.18 for both. After ascertaining that defendant was the owner of the store, Officer Bruce obtained an arrest warrant and Gambino was arrested. The magazine "National Screw", issue of July 1977, is the subject of this prosecution.
Assignments 1, 2, 3, 14, 15, 16 and 19 Essentially these assignments question whether the magazine depicts "actual ultimate *1110 sexual acts or simulated or animated ultimate sexual acts" as set forth in Section F(1) of the Obscenity Act.
The Obscenity Act prohibits the arrest of any person for violating its provisions unless they have been afforded a prior adversary hearing at which the suspect has been made a defendant and the material has been found to be obscene. Section F(1) of the Act creates an exception to this prohibition permitting an arrest and prosecution without a prior adversary hearing when the obscene material shows "actual ultimate sexual acts or simulated or animated ultimate sexual acts when there is an explicit, close up depiction of human genital organs so as to give the appearance of consummation of ultimate sexual acts."
If this Court agrees with the jury that the four pictures in question in this magazine depict ultimate sexual acts with explicit, close-up depiction of human genital organs so as to give the appearance of consummation of ultimate sexual acts then the arrest and prosecution of defendant without a prior adversary hearing was not prohibited by law.
All four pictures are photographs of women engaged in acts of cunnilingus. At least three of the photographs depict the vaginas of participants. In one photograph there is an explicit, close-up depiction of a woman's vagina. All photographs give the appearance of the consummation of the ultimate sexual act of cunnilingus. In two of the photographs all of the subjects are nude; in another one of the female participants is partially clothed; and the other, a close-up photograph, only portrays the vagina of one participant and the tongue, mouth, face, head, hand and shoulder of the other.
In addition to the finding of the jury, the trial judge observed in his reasons for the sentence imposed that he had reviewed the magazine and in his opinion the photographs did depict ultimate sexual acts. He stated, moreover, that the magazine had no literary, artistic, political or scientific value. In fact, he declared, the publication was trash and should not be sold in New Orleans. To impose a lesser sentence, he held, would depreciate the nature of defendant's crime.
An argument is made by the defense that his conviction was erroneous because none of the photographs depict penetration, which he asserts is essential to an ultimate sex act. Reliance is placed upon the definition of rape to support this argument. Because no penetration is depicted, the defense argues, the photograph depicts only imminent lesbian activity, acts not considered obscene in Huffman v. United States, 163 U.S.App.D.C. 417, 502 F.2d 419 (1974). In the Huffman Case the material consisted of collections of photographs of two nude or near-nude females shown undressing, caressing, fondling and embracing each other. The photographs were accompanied by brief written material, including a trilingual statement purportedly addressed to "serious students of art."
Photographs at issue in the case at bar cannot be compared with the lesbian activity in the Huffman Case. Those at issue here are explicit, ultimate acts of deviate sexual conduct, not the remote foreplay found in Huffman. In the instant case the photographs depict activity which falls within the standard of hard-core sexual conduct formulated in Miller v. California, 513 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). That standard permits regulation of "patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated."
Furthermore, the statutes on rape relied upon to support the defense contention that the conduct at issue here was not the ultimate sex act reprobated by the Obscenity Act are inapplicable. La.Rev.Stat. 14:41-41.1.[2] Those acts apply to rapes, both heterosexual *1111 and homosexual, involving vaginal and anal intercourse. Sexual acts prohibited by those statutes involving at least one man are unlike the deviant sexual acts at issue here involving only women. The rape statutes cited do not apply either factually or legally to the case at bar.
Thus in our independent review we agree with the jury, which is the repository of community standards in this case, that the photographs in question depict the "ultimate sexual acts" contemplated by Section F(1). Accordingly, the trial judge correctly denied defendant's motion to quash, motion to suppress, and motion for a prior hearing which are at issue in these assignments of error.
Assignment 18Alternatively, the defense contends that the exception to a prior adversary hearing contained in Section F(1) of the Obscenity Act is invalid because the term "ultimate sexual acts" is unconstitutionally vague. The prior adversary hearing generally required by the Act was therefore a prerequisite to this prosecution. Consequently, denial of the motion in arrest of judgment based upon this premise was error, according to defendant. In Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), the phrase "ultimate sexual acts, normal or perverted, actual or simulated" were approved as properly constituting the hard-core sexual conduct which states may regulate. The standards and definition approved in Miller v. California are largely the bases of Louisiana's Obscenity Act. A widespread use of the phrase has acquired a well-known and acceptable meaning, readily comprehended by the average person. As we read the defense brief, it is conceded that the phrase includes coitus, anal and oral intercourse. The photographs at issue are examples of ultimate sexual acts. In the apt words of Mr. Chief Justice WARREN, defendant in this case was
"plainly engaged in the commercial exploitation of the morbid and shameful craving for materials with prurient effect. I believe that the State and Federal Governments can constitutionally punish such conduct. That is all that these cases present to us, and that is all we need to decide." Roth v. United States, 354 U.S., 476 at 496, 77 S.Ct. 1304 at 1315, 1 L.Ed.2d 1498 at 1513.
Therefore, the exception to the requirement of a prior adversary hearing is couched in constitutionally acceptable language under approved standards of statutory construction. State v. Skinner, 358 So.2d 280 (La.1978).
Assignments 17 and 20Defendant argues that the trial judge erred in refusing to grant his motion for directed verdict and motion for a new trial.
The trial was before a jury in which case a directed verdict is not permitted. La.Code Crim.Pro. art. 778.
Basically, the motion for a new trial adopts the proposition that the magazine is not obscene. Although the magazine may contain pictures showing hard-core sexual conduct, the argument goes, it does not, taken as a whole, lack "serious literary, artistic, political or scientific value". This is so, according to defendant, because the obscene pictures occur on about fifty percent of the magazine's pages while the rest of the publication is devoted to material containing "serious literary, artistic, political or scientific value." Therefore, the magazine does not "taken as a whole" meet the test of prohibited obscenity set forth in Section A(2) of the Act.
The contention is without merit. Conceding arguendo that some material in the magazine is of a serious literary, artistic, political or scientific value, that material has no rational relationship to that found by the jury, the trial judge and this Court to be hard-core sexual depictions. It is the offensive depiction of sexual conduct itself which must have "serious literary, artistic, political or scientific value" to merit First *1112 Amendment protection. It has often been held that that obscene material is not protected by the First Amendment. Miller v. California, supra. Placing prohibited obscene depictions in a magazine, book, or newspaper which contain other, unrelated articles or pictures of literary, etc., value does not suffice to make obscenity legally acceptable. "A quotation from Voltaire in the flyleaf of a book will not constitutionally redeem an otherwise obscene publication." Kois v. Wisconsin, 408 U.S. 229, 92 S.Ct. 2245, 33 L.Ed.2d 312 (1972).
Assignments 21 and 22 The defense contends that the State offered no evidence of community standards and the only evidence on the subject was offered by defendant's expert. This evidence, the defendant argues, indicates that the average man would not find "National Screw", July 1977, to be obscene. Thus, defendant concludes, there is no evidence in the record that the controverted magazine lacked serious literary, artistic, political or scientific value.
The prosecution in an obscenity case need not offer expert testimony regarding community standards. "[A] juror is entitled to draw on his own knowledge of the views of the average person in the community or vicinage from which he comes for making the required determination." Hamling v. United States, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974).
And no error occurred because the jury did not accept the testimony of defendant's expert. It is the function and prerogative of the jury to evaluate the evidence and accept or reject what is presented. They are not bound to accept the opinion of any expert in weighing the evidence of obscenity.
Assignment 13Incompetent "scientific" evidence was introduced by the State in the course of cross-examining defendant's expert witness, the defense asserts. Because of this, it is claimed, the jury rejected the testimony of the defendant's expert witness.
After extensive testimony on direct examination defendant's expert concluded that "National Screw", July 1977, was not obscene, contained material of a literary, scientific and political value and would not be considered obscene by the average adult in New Orleans. On cross-examination he was asked, over defense objection, if he agreed with a statement of Dr. Vanderhaig, a prominent psychiatrist which appeared in the local paper to this effect: "Pornography invites us to recognize other persons purely as means to our sexual pleasure and exploit them as we exploit animals." He answered, "I agree with part of it. I don't agree with the part about exploitation."
In his per curiam to this assignment of error the trial judge wrote:
"Defense counsel contends that court erred in allowing the State to read a quotation to Dr. Koenig [defendant's expert] during cross-examination.
"Cross examination of an expert witness by reference to medical and other scientific authorities is generally sanctioned for purposes of testing his knowledge, background and accuracy and to such ends, quotations may be read to witnesses from standard treatises provided that the object is not to get their contents and opinions of the author before the jury. State v. Sauls [226 La. 694] 77 So.2d 8 (1955). In the present case the quotation may not have been from a standard treatise, but from the newspaper a respected literary source. The article discussed was by a well-known psychologist and was mentioned strictly for the purpose of discussing Dr. Koenig's views on the subject matter."
In our view the trial judge correctly explained the basis for his ruling, and this assignment has no merit.
Assignments 23 and 24A claim is made that the sentence imposed is cruel, excessive and unusual. The sentence is within the limits prescribed by statute: Not less than one hundred dollars nor more than one thousand dollars, or imprisoned for not more than one year or both. La.Rev.Stat. 14:106G.
*1113 Sentence was imposed by the trial judge in keeping with the guidelines set forth in Article 894.1 of the Code of Criminal Procedure. Compliance with that article averts the possibility of excessive or capricious sentences. It assures that the sentencing authority is given adequate information and guidance in sentencing and provides reviewable standards.
A sentence imposed by a judge within the statutory limits is generally not subject to review. State v. Pierson, 296 So.2d 324 (La.1974); State v. Polk, 258 La. 738, 247 So.2d 853 (1971).
The trial judge has not abused his discretion in this sentencing.
For the reasons assigned, the conviction and sentence are affirmed.
DENNIS, J., concurs and assigns reasons.
TATE, J., dissents and assigns reasons.
DIXON, J., dissents with reasons.
CALOGERO, J., dissents and assigns reasons.
DENNIS, Justice, concurring.
I join in the majority opinion for the reason that the photographic materials do show "actual ultimate sexual acts" in that they depict "explicit, closeup depiction of human genital organs so as to give the appearance of the consummation of ultimate sexual acts." In my opinion the "ultimate sexual act" is neither ambiguous nor intended by the legislature to be equated with penetration. Instead its meaning encompasses all behavior clearly having no goal other than sexual penetration. The pictures of imminent oral-vaginal intercourse unmistakably give the appearance of the consummation of ultimate sexual acts. Although actual penetration is not depicted, any reasonable viewer would conclude that the scenes are those of the finish or completion, i. e., the consummation, of the sexual act, and not depictions of mere foreplay which may or may not lead to sexual penetration.
TATE, Justice, dissenting.
I respectfully dissent.
In my opinion: (1) The intended cunnilingus's however obscene, is not the depictions of attempted "ultimate sexual acts" so as to be hard-core pornography within the meaning of Obscenity Act, which only in such event permits arrest and conviction without a prior adversary hearing to determine whether the offensive depiction is a criminal offense; (2) If they are, then the statute is unconstitutionally vague in this respect, concerning as it does First Amendment rights of free press at issue; (3) In any event, the sentence imposed is excessive and should be set aside.
DIXON, Justice (dissenting).
I respectfully dissent, believing a prior adversary hearing is required under the Louisiana statute before defendant can be prosecuted.
CALOGERO, Justice, dissenting.
I respectfully dissent, being of the opinion that the material at issue depicts no "ultimate sexual act" and thus should have been the subject of a prior, adversary determination of the obscenity issue.
NOTES
[1] The pertinent provisions of the obscenity statute follow:

"A. The crime of obscenity is the intentional:
* * * * * *
"(2) Participation or engagement in, or management, production, presentation, performance, promotion, exhibition, advertisement, sponsorship, or display of, hard core sexual conduct when the trier of fact determines that the average person applying contemporary community standards would find that the conduct, taken as a whole, appeals to the prurient interest; and the hard core sexual conduct, as specifically defined herein, is presented in a patently offensive way; and the conduct taken as a whole lacks serious literary, artistic, political, or scientific value.
"Hard core sexual conduct is the public portrayal, for its own sake, and for ensuing commercial gain of:
"(a) Ultimate sexual acts, normal or perverted, actual, simulated or animated, whether between human beings, animals, or an animal and a human being; or
"(b) Masturbation, excretory functions or lewd exhibition, actual, simulated or animated, of the genitals, pubic hair, anus, vulva, or female breast nipples; or
"(c) Sadomasochistic abuse, meaning actual, simulated or animated, flagellation or torture by or upon a person who is nude or clad in undergarments or in a costume which reveals the pubic hair, anus, vulva, genitals, or female breast nipples, or in the condition of being fettered, bound, or otherwise physically restrained, on the part of one so clothed; or
"(d) Actual, simulated, or animated touching, caressing, or fondling of, or other similar physical contact with a pubic area, anus, female breast nipple, covered or exposed, whether alone or between humans, animals, or a human and an animal, of the same or opposite sex, in an act of apparent sexual stimulation or gratification; or
"(e) Actual, simulated, or animated stimulation of a human genital organ by any device whether or not the device is designed, manufactured, or marketed for such purpose.
"(3) Sale, allocation, consignment, distribution, dissemination, advertisement, exhibition, or display of obscene material, or the preparation, manufacture, publication, or printing of obscene material for sale, allocation, consignment, distribution, advertisement, exhibition, or display.
"Obscene material is any tangible work or thing which the trier of fact determines (a) that the average person applying contemporary community standards would find, taken as a whole, appeals to the prurient interest, and (b) depicts or describes in a patently offensive way, hard core sexual conduct specifically defined in Paragraph (2) above; and (c) the work or thing taken as a whole lacks serious literary, artistic, political, or scientific value.
"(4) Requiring as a condition to a sale, allocation, consignment, or delivery for resale of any paper, magazine, book, periodical, or publication to a purchaser or consignee that such purchaser or consignee also receive or accept any obscene material, as defined in Paragraph (3) above, for resale, distribution, display, advertisement, or exhibition purposes; or denying or threatening to deny a franchise to, or imposing a penalty, on or against, a person by reason of his refusal to accept, or his return of, such obscene material.
"(5) Solicitation or enticement of an unmarried person under the age of seventeen years to commit any act prohibited by Paragraphs (1), (2), or (3) above.
"(6) Advertisement, exhibition, or display of sexually violent material. `Violent material' is any tangible work or thing which the trier of facts determines depicts actual or simulated patently offensive acts of violence, including but not limited to, acts depicting sadistic conduct, whippings, beatings, torture, and mutilation of the human body, as described in Subparagraph (c) of Paragraph (2) of Subsection A herein.
* * * * * *
"(1) Except for those motion pictures, printed materials, and photographic materials showing actual ultimate sexual acts or simulated or animated ultimate sexual acts when there is an explicit, closeup depiction of human genital organs so as to give the appearance of the consummation of ultimate sexual acts, no person, firm, or corporation shall be arrested, charged, or indicted for any violations of a provision of this Section until such time as the material involved has first been the subject of an adversary hearing under the provisions of this Section, wherein such person, firm, or corporation is made a defendant and, after such material is declared by the court to be obscene, such person, firm, or corporation continues to engage in the conduct prohibited by this Section. The sole issue at the hearing shall be whether the material is obscene."
[2] La.Rev.Stat. 14:41:

"Heterosexual rape is the act of sexual intercourse with a female person not the wife of, or judicially separated from bed and board from, the offender, committed without her lawful consent. Emission is not necessary; and any sexual penetration, vaginal or anal, however slight, is sufficient to complete the crime."
La.Rev.Stat. 14:41.1:
"Homosexual rape is the act of anal sexual intercourse with a male person committed without his consent. Emission is not necessary, and any anal sexual penetration, however slight, is sufficient to complete the crime."