THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* ERIC NIELSEN, Defendant-Appellee.

First District (1st Division)    No. 61032

Opinion filed April 19, 1976.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Michael E. Shabat, and Linda Ann Miller, Assistant State's Attorneys, of counsel), for the People.

Thomas E. Holum, of Chicago, for appellee.

Mr. JUSTICE BURKE delivered the opinion of the court:

Eric Nielsen was charged with possession of marijuana in violation of section 4 of the Cannabis Control Act (Ill. Rev. Stat. 1973, ch. 56½, par. 704). Prior to trial, the defendant moved to suppress the evidence, and after a hearing the court granted the defendant's motion. The State appeals, contending that there was probable cause to make the search which uncovered the suppressed evidence and that the circumstances excused the requirement of obtaining a search warrant. There was no real dispute as to the facts presented during the hearing on the defendant's motion to suppress the evidence. Only one witness testified, Officer Pesavento of the Chicago Police Department, Vice Control Division, Narcotics Section. Officer Pesavento was called as a witness by the People. The remaining evidence was presented by stipulation.

On Sunday morning, February 18, 1974, a suitcase was checked in by persons unknown at Lindbergh Field, San Diego, California, for American Airlines flight 554 to depart at 8:25 that morning bound for Chicago. John Giering, a baggage handler for American Airlines, became suspicious of the suitcase because of its weight and feel. He could detect the odor of marijuana emanating from it while it was closed. He called Officer William Shubert and told him these facts. He invited Shubert to be present while he fluoroscoped the bag. Shubert was a member of the San Diego Harbor Police and had had a great deal of experience with fluoroscoping objects for evidence of drugs which might be contained therein.

Giering proceeded to fluoroscope the suitcase with Officer Shubert looking on. A scan of the suitcase with the fluoroscope revealed a number of oblong-shaped objects approximately 9 inches by 4 inches on the fluoroscope's screen. There were separation marks between the objects, and the objects had irregular edges as opposed to straight edges which would have been observed if the objects were boxes. Relying on the weight of the suitcase and the shape of the objects and his prior experience, Officer Shubert believed the suitcase contained marijuana and therefore opened the suitcase. Shubert stated that although he could smell marijuana before the bag was opened, this was not the basis upon which he opened the bag.

At approximately 8:20 that morning Shubert telephoned Narcotics Agent Larry Narron of the San Diego County Sheriff's Department. Shubert told Narron that he had X-rayed a suitcase and had observed numerous kilo packages in it, that the suitcase was brought to the airport by persons unknown and was to depart on flight 554 for Chicago within

the next five minutes. About ten minutes later, Narron received a second phone call from the Harbor Police that the suitcase had not been placed aboard flight 554 and it would not be departing for Chicago until 10:10 a.m. on American Airlines flight 28. Narron arrived at the airport at about 9 a.m. and examined the contents of the suitcase. He photographed the suitcase, and then he and Officer Shubert placed their initials on the suitcase and Narron initialed one of the "bricks" of marijuana with an "L. N." Narron stated he could detect the odor of marijuana while the suitcase was closed. The suitcase was then placed aboard American Airlines flight 28 for O'Hare Field in Chicago.

At approximately 10:15 a.m., Agent Narron advised Officer Don Zealey of the Chicago Police Department, Vice Control Division, Narcotics Section, of these facts. Zealey was informed that the suitcase containing the marijuana was a 24″ by 18″ by 10″ brown Samsonite Ventura suitcase bearing tag number 966753. Officer Pesavento, also of the Narcotics Section of the Chicago Police Department, testified that he had a conversation with Officer Zealey who informed him of these facts at approximately 1 p.m. on that date. Flight 28 was to arrive at O'Hare Field at 3:30 p.m. Officer Pesavento and two colleagues, Officers Riley and Evans, tried to contact the State's Attorney assigned to their area regarding the issuance of a warrant, but he was not available at that time. Pesavento testified that the officers determined that they might miss the arrival of the suitcase if they delayed any longer in trying to obtain a search warrant, so they proceeded from the 11th and State Street Police Headquarters to O'Hare Field to intercept the suitcase.

They arrived at O'Hare Field at about 3 p.m., went to the American Airlines counter and were notified that the flight's arrival had been delayed. After several more delays of about 15 minutes each, the flight arrived. The suitcase, which met the San Diego Police's description, was identified and the officers waited for it to be picked up. American Airlines then received a call for the luggage from a person who identified himself as Mr. Nielsen, and who requested that the suitcase be delivered to 2926 North Burling in Chicago. The suitcase was then turned over to Officer Pesavento who was to deliver it to Mr. Nielsen. Pesavento and the other officers then proceeded to 2926 North Burling and rang the bell. Nielsen answered the door and Officer Pesavento represented himself to be an American Airlines messenger. Nielsen then handed Pesavento the claim ticket after signing it. Nielsen was thereupon placed under arrest. Upon being asked if he knew the combination to the suitcase, Nielsen opened the suitcase which revealed what Officer Pesavento believed, based on his experience as a vice control officer, to be 18 "bricks" of marijuana wrapped in brown paper. One brick contained the initials "L. N." The police then seized the packages, which were inventoried and tested

by employees of the Chicago Police Crime Laboratory. The tests showed that all the packages contained marijuana.

The court sustained the motion to suppress the seized evidence, finding that the failure of the San Diego Police to obtain a search warrant before opening the suitcase made the search illegal. The court said that the officer's experience, observations and the results of the fluoroscoping gave sufficient probable cause for the issuance of a search warrant. However, the judge ruled that the failure to obtain a search warrant made the opening of the suitcase unlawful. The proper action for the San Diego Police to have taken, the court suggested, would be to retain custody of the suitcase until a search warrant could be obtained and then to open it. The court stated that if this had been done, the search in San Diego would have been proper and would have given the Chicago Police lawful grounds for their arrest of the defendant and the seizure of the suitcase and contents.

The People contend that the San Diego Police had probable cause to search the suitcase and that under the circumstances they were not required to procure a search warrant before searching the luggage. The defendant concedes that there was probable cause to believe that the suitcase contained marijuana, both before the suitcase was fluoroscoped and before it was opened in San Diego. Defendant insists that the court was correct in finding that the San Diego Police violated the defendant's Fourth Amendment rights in fluoroscoping and opening the suitcase without first obtaining a search warrant. The only issue on appeal is whether the San Diego Police should have obtained a search warrant before they fluoroscoped and opened the suitcase, even though they had probable cause to believe the suitcase contained marijuana.

It is normally the rule that even though the police have probable cause to believe they know the whereabouts of concealed contraband, they should obtain a search warrant before searching an individual's private property. One of the exceptions to this rule is that the exigencies of the situation may excuse the requirement of obtaining a search warrant where the delay might result in the flight of the suspect or the removal of the contraband. (*Johnson v. United States*, 333 U.S. 10, 92 L.Ed. 436, 68 S. Ct. 367.) The defendant asserts that there was no danger of the contraband being removed because the police had possession of the suitcase which they could have held until they obtained a search warrant.

■■ It is questionable whether searching a suitcase is a greater invasion of one's constitutional rights than seizing and holding the same suitcase until a search warrant is obtained. In *Chambers v. Maroney*, 399 U.S. 42, 26 L.Ed. 2d 419, 90 S.Ct. 1975, the police had probable cause to search an automobile for contraband. The defendant contended that they should have seized the car and obtained a search warrant before making a search

rather than making an immediate search of the car without a warrant. The Supreme Court disagreed, holding that an immediate search of the car was no greater an intrusion on the defendant's rights than a temporary seizure of the car until a warrant could be obtained. The court held that under the circumstances either course of action was reasonable.

■■ The defendant's suggestion that the police should have held the suitcase until obtaining a warrant also loses sight of one of the legitimate concerns of the police: that any delay in the departure of the suitcase might alert its owner that something was wrong and inhibit the police effort to arrest him. The defendant argues that the People offered no evidence to show that the scheduled departure of the suitcase was imminent at the time of the search. We disagree with this contention. The evidence showed that the suitcase was checked in to American Airlines some time in the morning hours of February 18, 1974, which was a Sunday. It was scheduled to depart on American Airlines flight 554 at 8:25 that morning. The difficulty of obtaining a search warrant early on a Sunday morning should be apparent to everyone. As events developed the suitcase did not get on its scheduled departure flight. It had to be sent out on a later flight, apparently because the time taken in the search caused it to miss the flight. All the evidence at the hearing was uncontradicted and points to the conclusion that the San Diego Police lacked the time to obtain a search warrant before the scheduled departure. We are of the opinion that it would be unreasonable under these circumstances to require that the police obtain a search warrant before fluoroscoping and opening the suitcase.

■■ A number of similar cases have held that exigent circumstances excused the obtaining of a search warrant where the police had probable cause to believe that luggage contained contraband. In *United States v. Ogden* (9th Cir. 1973), 485 F. 2d 536, the defendant and his wife checked their bags at 1:30 p.m. for a 2:20 p.m. flight. The weight of one of the bags and the odor of marijuana tipped off the baggage handler and police to the probable presence of contraband. The court held that the exigencies of time and the possibility of removal of both the contraband and the suspects excused the obtaining of a search warrant. The court rejected the suggestion that the luggage be held until a warrant was obtained, citing *Chambers v. Maroney*, 399 U.S. 42, 26 L. Ed. 2d 419, 90 S. Ct. 1975, which we have discussed.

In *Hernandez v. United States* (9th Cir. 1965), 353 F. 2d 624, the police had probable cause to believe that the defendant's luggage contained marijuana. They were first contacted at 8:50 p.m. The luggage was scheduled to depart at 10:50 p.m. There was testimony that the police could not obtain a search warrant by departure time. Again it was held that the circumstances excused the search warrant requirement. In

*Chaires v. State* (Tex. Crim. App. 1972), 480 S. W. 2d 196, a warrantless search of luggage was upheld where police had probable cause to believe that luggage scheduled to depart by plane within half an hour contained contraband. That court found no merit in the suggestion that the luggage should have been withheld from the flight, citing *Chambers*. Several other decisions have upheld warrantless searches of luggage where the police had probable cause to believe that checked luggage which was to depart shortly contained contraband. (*Clayton v. United States* (9th Cir. 1969), 413 F.2d 297; *Romero v. United States* (5th Cir. 1963), 318 F.2d 530.) Where there is probable cause for a search and the obtaining of a search warrant is likely to frustrate the legitimate governmental purpose for the search, the obtaining of a search warrant should be excused. See *Camara v. Municipal Court*, 387 U.S. 523, 18 L. Ed. 2d 930, 87 S.Ct. 1727.

■■ We are of the opinion that in the instant case imposing the burden of obtaining a search warrant upon the police would have frustrated their legitimate purposes, which included the seizure of the contraband and the arrest of the owner. The State established sufficient exigent circumstances to excuse the obtaining of a search warrant. We find no merit in the defendant's suggestion that the suitcase should have been held until a search warrant was obtained. This might have alerted the owner of the suitcase, making his arrest more difficult.

Accordingly the order sustaining the defendant's motion to suppress the evidence is reversed and the cause is remanded for further proceedings.

Order reversed and cause remanded for further proceedings.

GOLDBERG, P. J., and SIMON, J., concur.