**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Robert Lee STEVENS, Defendant-Appellee.**

No. 78–1884.

United States Court of Appeals, Ninth Circuit.

Aug. 3, 1979.

Chester L. Brown (argued), Brown & Newton, Beverly Hills, Cal., for defendant-appellee.

John D. Vandevelde, Asst. U. S. Atty. (argued), Los Angeles, Cal., for plaintiff-appellant.

Before ELY and TRASK, Circuit Judges, and EAST,* District Judge.

TRASK, Circuit Judge:

Robert Lee Stevens appeals from his conviction for making false statements to banks insured by the Federal Deposit Insurance Corporation in violation of 18 U.S.C. § 1014, and for making a certificate of deposit without authority and with intent to defraud in violation of 18 U.S.C. § 1005. We affirm.

I

Appellant was found guilty after a jury-waived trial on stipulated facts. He admitted that on January 9, 1975, he applied for a loan of $225,000 from the United California Bank and presented a stolen and forged Bank of America time certificate of deposit in the amount of $250,000 as security for that loan. The certificate had been stolen with the assistance of a Bank of America employee. Stevens signed the employee's

* Honorable William G. East, Senior United States District Judge, for the District of Oregon, sitting by designation.

name to the certificate and to a letter acknowledging that the certificate had been posted as security for the United California Bank loan. Stevens renewed the loan on February 2, 1976, again pledging the stolen and forged certificate as collateral. On March 10, 1975, he applied for a $125,000 loan from Gibraltar Savings and Loan; on January 20, 1976, he applied for a $5,000 loan from Lloyds Bank; on November 18, 1976, he applied for a $5,000 loan from Manufacturers Bank. In each instance the loan application failed to disclose Stevens' liability to United California Bank.

Stevens made no payments on the United California Bank loan after February 1976. United California Bank presented the $250,-000 certificate of deposit it held as collateral to the Bank of America on October 23, 1976, and learned the certificate was invalid. On November 4, 1976, United California Bank investigator Frank Northrup and Bank of America investigator Gerald E. Caminer met with Stevens' attorney, Barry Menes. Menes told the investigators that Stevens had informed him that two former employees of United California Bank and Bank of America had been involved in the theft and forgery of the certificate. Menes said Stevens might refuse to identify the employees because of the risk of self-incrimination. However, Menes indicated that his client might be willing to sign a repayment agreement.

Later that afternoon Stevens joined the meeting. Stevens' and Menes' version of what was said contrasts sharply with Northrup's and Caminer's account. According to Stevens and his lawyer, the bank investigators promised that if Stevens signed a repayment agreement and disclosed the identity of the bank employees who helped him obtain the stolen certificate of deposit, the banks would not notify the FBI or otherwise initiate criminal proceedings against him. Relying on this so-called "promise of immunity from prosecution," Stevens said he would sign the repayment agreement, and he gave the investigators a detailed account of the theft and forgery of the certificate of deposit. At the conclusion of the meeting, Caminer prepared a memorandum which said the banks' representatives had orally promised not to initiate a prosecution against Stevens if he performed his part of the bargain. Northrup and Caminer later claimed the memorandum was inaccurate.

Five days after the meeting of November 4, 1976, a United California Bank official reported Stevens' incriminating statements to the FBI. A federal investigation resulted, and on September 19, 1977, a federal grand jury for the Central District of California indicted appellant on seven counts of making false statements to banks insured by the Federal Deposit Insurance Corporation and making a certificate of deposit without authority and with intent to defraud.

In a pretrial motion, Stevens argued that the bank investigators were *de facto* government agents, and he asked the district court either to decree specific performance of the alleged promise of immunity by dismissing the indictment or to suppress the confession and its fruits because they were obtained by means of a false promise. It is from the denial of this motion that Stevens now appeals. The district judge made no findings of fact regarding what, if any, promises were made. He reasoned that even if all of Stevens' allegations were true, the government was not bound by the investigators' promise of immunity because, as a matter of law, they were not government agents. We agree with the district court's analysis and likewise see no reason to resolve the factual dispute over what was said at the November 4, 1976 meeting.

II

Under certain circumstances private actors are transformed into government agents by virtue of their involvement in a federally regulated crime prevention program. This doctrine is best illustrated by the airplane passenger search cases. In *United States v. Canada*, 527 F.2d 1374 (9th Cir. 1975), *cert. denied*, 429 U.S. 867, 97 S.Ct. 177, 50 L.Ed.2d 147 (1976), and *United States v. Davis*, 482 F.2d 893 (9th Cir. 1973),

this court held that because federal regulations require privately employed airline security personnel to search passengers' carry-on luggage, such searches constitute state action for Fourth Amendment purposes. However, where the regulations do not specifically mandate the particular type of search engaged in, the airline employees' actions are deemed private in nature. *See United States v. Gumerlock*, 590 F.2d 794 (9th Cir. 1979) (en banc) (search of airfreight shipment held private); *United States v. Ogden*, 485 F.2d 536 (9th Cir.), *cert. denied*, 416 U.S. 987, 94 S.Ct. 2391, 40 L.Ed.2d 764 (1973) (search of checked baggage held private).

Appellant analogizes his interrogation by bank investigators to the search of airplane passengers in *Canada* and *Davis*. According to Stevens, the interrogation and concomitant promise of immunity were mandated by federal regulations and were therefore government actions. Appellant points out that banks insured by the Federal Deposit Insurance Corporation are required to report wrongdoing to federal authorities. He says banks cannot discharge their duties without conducting investigations and interviews. To secure an interviewee's cooperation, promises of immunity are sometimes necessary, Stevens claims. Under appellant's theory, the federal regulatory scheme cloaks bank investigators with apparent authority to make such promises. In effect, bank investigators have been deputized as *de facto* government agents. And when government agents make promises to a person in order to induce him to incriminate himself, the government must honor those promises. *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); *United States v. Rodman*, 519 F.2d 1058 (1st Cir. 1975); *United States v. Carter*, 454 F.2d 426 (4th Cir.) (en banc), *cert. denied*, 417 U.S. 933, 94 S.Ct. 2646, 41 L.Ed.2d 237 (1972). Appellant would have us hold that the bank investigators' promises bind the United States, just as the Securities and Exchange Commission investigator's promises bound the government in *Rodman* and the prosecutors' promises bound the government in *Santobello* and *Carter*.

We reject Stevens' arguments for two reasons. First, it requires an unreasonable stretch of the imagination to read into the banking regulations a provision granting private investigators, who are answerable to no one save their own employers, the power to confer immunity from prosecution. Second, in light of the fact that the investigators possessed sufficient information to comply with federal reporting requirements *before* they questioned Stevens, the interrogation and promise of immunity can only be regarded as gratuitous private acts rather than as deeds performed at the government's behest.

As Judge Friendly, writing for the court in *United States v. Solomon*, 509 F.2d 863 (2d Cir. 1975), has observed, courts should be extremely reluctant to interpret a federal regulatory scheme as implicitly authorizing a private party to confer immunity from prosecution. In *Solomon* the court rejected the defendant's argument that interrogation by New York Stock Exchange officials was tantamount to questioning by federal agents. The court held that notwithstanding federal regulation of the Exchange, its investigatory functions were essentially private. In so holding, the Second Circuit noted that the consequence of deeming Exchange officials government agents would be to vest them "and many other similar bodies . . . with the power to grant use immunity." That would be highly injurious to justice, the court said, because the private groups could grant immunity "without any weighing of the need for the evidence against the undesirability of conferring an immunity which goes beyond the testimony or information itself, and without the supervision of the Attorney General to which even government agencies are subjected." 509 F.2d at 870. Similar considerations militate against adoption of appellant's theory in the case at bar.

Even if Stevens' theory did have merit, his appeal would still fail because it is based upon a false premise. It simply is not true that the bank investigators had to interro-

gate Stevens in order to secure enough information to comply with federal banking regulations. To expose the fallacy in appellant's argument, we must first examine the statutes and regulations on which he relies.

12 U.S.C. § 1881(3) describes the Federal Deposit Insurance Corporation as a "Federal supervisory agency." 12 U.S.C. § 1882(a) requires each Federal supervisory agency to promulgate rules establishing minimum standards for banks "with respect to the installation, maintenance, and operation of security devices and procedures, reasonable in cost, to discourage robberies, burglaries, and larcenies and to assist in the identification and apprehension of persons who commit such acts." 12 U.S.C. § 1884 imposes a civil penalty of $100 a day for violations of the rules. 12 C.F.R. § 326 prescribes the kinds of security devices banks must install and mandates certain reports. Appellant places particular emphasis on § 326.5(d) which reads:

> "(d) *External crime reports.* Each time a robbery, burglary or nonbank employee larceny is perpetrated or attempted at a banking office operated by an insured state nonmember bank, the bank shall, within a reasonable time, file a report in conformity with the requirements of Form P–2. One copy of such report shall be filed with the appropriate state supervisory authority and three copies of such report shall be filed with the Regional Director of the Federal Deposit Insurance Corporation Region in which the main office of the reporting bank is located."

Form P–2 contains 38 questions. First the bank must describe where and when the crime was perpetrated, state whether it was a robbery, a burglary, or a non-employee larceny, and estimate the bank's losses. Then it must answer the questions set forth in the applicable subsection. If a robbery was committed, the bank must answer a series of questions about the robber's *modus operandi,* his appearance, his weapons, etc. If a burglary was perpetrated, the bank has to describe how the burglars gained entrance to the premises, what they broke into, and so forth. If the crime consisted of a non-employee larceny, the bank has to answer only one question:

> "32. Modus operandi of larceny (check one):
>
> a. (60) ___ Money or valuables where thief had access. Explain. _____
> _____
>
> b. (61) ___ Theft by trick or pretext; Explain _____
>
> c. (62) ___ Other, specify _____
> _____"

In addition, all banks must state how long it took the police to respond, whether the perpetrators were arrested, and what types of security measures might prevent future crimes.

The record plainly shows that before Caminer and Northrup spoke with Stevens on November 4, 1976, they had in their possession all of the information they needed to answer every applicable question on Form P–2. They had learned from Menes that bank employees had stolen the certificate of deposit. Stevens' knowledge of the employees' criminality plus his use of the stolen instrument as collateral for a loan suggested that he, a non-employee, was somehow involved in the larceny. These were essentially the only facts the bank officials needed to know. They did not have to discover and disclose the dishonest employees' names or the exact means by which Stevens and his accomplices committed the crimes. To comply with federal regulations, all the bank officials had to do was report Stevens' probable involvement and give a general indication of his *modus operandi* (*i. e.,* state that Stevens did not steal the certificate himself but rather obtained it from a dishonest employee). The task of ferreting out Stevens' confederates from among the various employees who had access to certificates of deposit should have been left to the FBI.

■ *United States v. Ogden, supra,* and *United States v. Gumerlock, supra,* stand for the proposition that if federal regulations authorize a private party to conduct a specific kind of investigation and employees of the regulated entity take the enquiry one step further than the regulations require,

**1080**

the employees lose their status as federal agents vis-a-vis the *ultra vires* acts. Like the airline personnel who checked baggage and airfreight shipments, Caminer and Northrup went further than federal regulations told them to go. Consequently their acts were purely private in character.

"A private person cannot act unilaterally as an agent or instrument of the state; there must be some degree of governmental knowledge and acquiescence." *United States v. Sherwin,* 539 F.2d 1, 6 (9th Cir. 1976) (en banc). There is not the slightest evidence that federal authorities encouraged or even knew about the banks' investigatory activities until several days after the November 4, 1976 meeting at which Stevens was interrogated and promised immunity. It is obvious that the investigators' foremost goal was not to serve the government but rather to protect their employers' financial interests; significantly, they made their promise of immunity conditional upon Stevens' signing a repayment agreement. Even if one of their objectives was to secure evidence for use against appellant in a criminal prosecution, Caminer and Northrup still cannot be considered *de facto* government agents. A mere purpose to assist the government is not sufficient in and of itself to convert a private actor into a government actor. *United States v. Gumerlock, supra,* 590 F.2d at 800; *United States v. Newton,* 510 F.2d 1149, 1153 (7th Cir. 1975).

We hold that the bank investigators were acting in a private capacity when they questioned appellant, and therefore the government is not obliged to honor any promises of immunity they may have made. The district court's denial of appellant's motion to dismiss the indictment or to suppress the confession and its fruits was proper. Appellant's conviction is hereby AFFIRMED.