978 F.2d 1266
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellant,
v.
Juvenal Rivera ROCHA, a.k.a. Mario Rivas, Defendant-Appellee.
 No. 91-50775.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 17, 1992.
Decided Nov. 4, 1992.
As Amended on Denial of Rehearing and Rehearing
En Banc March 22, 1993.
 
 Before WIGGINS, KOZINSKI and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 The United States takes an interlocutory appeal from the district court's suppression of 30 kilos of cocaine found in Rocha's suitcases at the Los Angeles International Airport. Because the district court's ruling was an order suppressing or excluding evidence in a criminal case, we have jurisdiction over an immediate appeal by the United States. 18 U.S.C. § 3731. We review a motion to suppress de novo. E.g., United States v. Prieto-Villa, 910 F.2d 601, 604 (9th Cir.1990).[1]
 
 
 3
 A. American Airlines has adopted a Federal Aviation Administration (FAA) policy requiring the x-raying and searching of passengers' luggage who fit a hijacker or terrorist profile. See 14 C.F.R. § 108; ER 167. Searches of passengers or their luggage pursuant to FAA security regulations "constitute[s] 'state action' for purposes of the Fourth Amendment." United States v. Davis, 482 F.2d 893, 904 (9th Cir.1973).
 
 
 4
 The agent here was justified in x-raying Rocha's bags as a security measure. Rocha appeard extremely nervous when he arrived at the ticket counter. He purchased a one-way ticket from Los Angeles to Chicago with cash -- $561, in small bills. When the agent asked for identification, Rocha replied that he had none. When the agent asked Rocha to look inside the suitcase for identification, he moved away from the ticket counter before peering inside the bags. He returned and asked for his money back, saying he would get someone else to buy the ticket or return later with identifaction. When the agent told Rocha he could take the flight anyway, Rocha placed his bags on the scale at the counter, double-checked the security of the latches and departed for the gate. The agent then x-rayed the luggage. ER 166.
 
 
 5
 The district court found that the agent "thought that defendant fit the hijacker profile and therefore put defendant's luggage through the x-ray machine to determine whether it contained an incendiary or explosive device." ER 167.[2] In light of the district court's finding, we hold that Rocha's Fourth Amendment rights were not violated when the agent subjected his bags to the relatively minor intrusion of an x-ray search.
 
 
 6
 B. The next constitutionally significant event occurred when the agent actually opened the first suitcase. The district court ruled that the ticket representative "was acting as a government agent when she searched defendant's suitcases." ER 169. As we have said, airline employees who act pursuant to the FAA regulations are generally considered government agents for purposes of the Fourth Amendment. There is one important limitation to that rule, however: "[I]f federal regulations authorize a private party to conduct a specific kind of investigation and employees of the regulated entity take the inquiry one step further than the regulations require, the employees lose their status as federal agents vis-a-vis the ultra vires acts." United States v. Stevens, 601 F.2d 1075, 1079-80 (9th Cir.), cert. denied, 444 U.S. 917 (1979).
 
 
 7
 Several factors indicate that the employee was, at least in part, motivated by a desire to find narcotics rather than explosives when she opened the suitcase, thereby taking her investigation "one step further" than required by the FAA regulations. First, she observed that the x-ray of the bags revealed large, brick-shaped objects bearing no resemblance to any sort of explosive. ER 167. Second, a trained x-ray technician advised her that the objects couldn't conceivably pose a danger to the aircraft. Id. Third, rather than summoning the bomb squad she called the LAPD's Airport Narcotics Division and reported that she had found drugs in a passenger's suitcase. Id. Finally, it's hard to believe that the employee would have jimmied opened a suitcase that she thought contained a bomb. The only reasonable inference to be drawn from the evidence is that the agent hoped to find drugs, not explosives, in the suitcase. To the extent the court found that the employee was looking only for explosives when she opened the suitcase, that finding is clearly erroneous.
 
 
 8
 Alternatively, to the extent the district court rested its ruling on the assumption that the airline employee continued to be a government agent even while searching for drugs, the court applied an incorrect legal standard. The presence of any motive on the part of an airline employee to act beyond the authority delegated to her by the FAA regulations renders the entire search a private one. Because this search was "undertaken in whole or in part to find narcotics, the airline employee[ ] acted officiously and not at the behest of the government.... A private search ... is not subject to the Fourth Amendment because the private actor is motivated in whole or in part by a unilateral desire to aid in the enforcement of the law." United States v. Gumerlock, 590 F.2d 794, 800 (9th Cir.) (en banc) (emphasis added), cert. denied sub nom. Fannon v. U.S., 441 U.S. 948 (1979); see also United States v. Ogden, 485 F.2d 536, 539 (9th Cir.), cert. denied, 416 U.S. 987 (1973).
 
 
 9
 C. Because the opening of the first suitcase was constitutional, the evidence discovered from it provided probable cause for the ensuing searches. See United States v. Jacobsen, 466 U.S. 109 (1984) (no violation of Fourth Amendment when government agents re-open package previously opened by private party). The police were justified in conducting a dog-sniff of the bags after the employee reported that she had seen cocaine inside the first suitcase. See United States v. Place, 462 U.S. 696, 706-07 (1983). The positive canine alert, coupled with the employee's visual observation of the cocaine, provided ample probable cause to support the magistrate's warrant. The 30 kilos of cocaine inside the two suitcases were then discovered in the course of a valid warrant search.
 
 Conclusion
 
 10
 The district court's orders suppressing the cocaine found in both suitcases are REVERSED; the case is remanded for trial.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The district court originally ordered the evidence from the first suitcase suppressed, but ruled the evidence from the second suitcase admissible under the independent source doctrine. See ER 44-46. The court later vacated, sua sponte, its earlier findings and order. ER 164. Subsequently, it issued new findings of fact and conclusions of law, and ordered the suppression of the cocaine found in both suitcases. ER 165. All references in this memorandum are to the later findings and conclusions
 
 
 [2]
 Hiding explosives in airline luggage is a common modus operandi for terrorists. The most notorious example is Pan Am Flight 103, where a bomb stowed inside a suitcase exploded over Lockerbie, Scotland, killing all 259 people aboard, and 11 on the ground. See, e.g., U.S. Guarding Informant in Pan Am Blast, Hou. Chron., Sept. 18, 1992, at A22. This isn't an isolated example. See also India Arrests Sikh in '85 Bombing of Jetliner, N.Y. Times, July 19, 1992, at A9 (suitcase bomb caused 1985 Air India crash which killed all 329 passengers); Ticking Bomb Found in Jumbo Jet's Luggage, Chi. Trib., July 11, 1991, at D20 (routine baggage x-ray discovered bomb in luggage just before it was to be loaded onto JAL flight from Sao Paolo to Tokyo; 332 people were aboard)